1811.

Philadelphia,
Saturday,
January 5.

THURSTON and another *against* MURRAY.

A paper which is not evidence *per se* in a suit between the underwriter and the assured, does not become so for any purpose, in consequence of having been exhibited by the latter to the former as one of the preliminary proofs of loss; except the question be merely whether such a paper was exhibited.

THIS cause was tried at a *Nisi Prius* in *November* last, before Mr. Justice *Brackenridge*.

It was an action on a policy of insurance on three fourths of the freight of the ship *Mary*, at and from *Amsterdam* to *Surinam* and back.

The ship sailed from *Amsterdam* on the 26th of *April* 1796, and three days afterwards was captured by a *British* frigate, and carried into *England*. On the 27th *January* 1802, the agent of the assured exhibited to the defendant's broker, a paper purporting to be a copy of a decree of the court of appeals in prize causes, condemning the cargo as prize. This document was not under seal; but at the time it was shewn, an indorsement was made upon it, stating the day of its exhibition, and that it was the decree of condemnation.

Upon the trial of the cause, this paper was offered in evidence generally to the jury. The counsel of the defendants did not object to the reading of the indorsement, to shew that the paper had been seen by the defendant's broker; but objected to the contents being read to the jury for any purpose. His honour, however, permitted it to be read, not as evidence of the truth of any matter contained in it, but to shew a communication from the plaintiffs, at the same time reserving the point; and this was the question before the court, upon a motion for a new trial by the defendant.

*Tilghman* and *Ingersoll* for the defendants. If there had been a dispute whether the document in question had been shewn to the underwriters, it might have been proper to produce it with a view to ascertain that fact; but the fact was not denied. The paper had not a feature of evidence about it, except what it derived from its exhibition at the insurance office; and it is monstrous to contend that every paper exhibited to the insurers, or even the papers which they expect to be exhibited to shew a loss, should become evidence by be-

ing shewn. *Senat* v. *Porter* (a) is directly to the contrary. It applies *à fortiori;* for in that case the court would not permit the underwriter to give in evidence the captain's protest, though it had been exhibited by the assured. .

*Dallas* for the plaintiffs. The sentence was not read as evidence of the truth of any fact asserted in it, but merely to shew that such a paper had been exhibited to the underwriters. It was admitted that the indorsement might be read, and the indorsement in fact stated all that was contained within. The jury were informed by the judge that it was not evidence of any decree having been made, and therefore the defendants were not injured by it. It was a paper which had been exhibited as proof of loss; it was one which is always expected and demanded among the preliminary proofs, if it exists; and the mere exhibition of it intitled the plaintiffs to the benefit of any inference arising from their compliance with the usual practice, and the demands of the assured. In *Ruan* v. *Gardner*, (b) the protest of a sailor, made not at the first port after loss, but on his return to *Philadelphia*, and presented to the underwriters, was allowed to be read in evidence for the purpose of shewing a compliance with that clause of the policy, which provides that payment shall be made within thirty days after proof of loss, although the facts contained in it were not evidence to be laid before the jury to prove the loss. This is the distinction upon which we assert the competency of the paper in question.

TILGHMAN C. J. On the trial of this cause at *Nisi Prius*, Judge *Brackenridge* reserved a point of law, for the consideration of this court. The agent of the plaintiffs, when he demanded payment of the loss, lodged with the broker through whom the insurance was effected, sundry documents to prove the loss, and among others, a writing purporting to be a copy of a decree of the *English* court of appeals in admiralty cases, not certified under the seal of the court. The defendant's counsel objected to the reading of this paper to the jury; but it was permitted to be read, not as evidence of

(a) 7 *D.* & *E.* 158.    (b) 2 *Condy's Marshall* 716. *note*

1811.

THURSTON
*v.*
MURRAY.

1811.

THURSTON
v.
MURRAY.

the truth of the matter contained in it, but as evidence of a communication from the assured to the underwriter. This point involves a question of considerable importance, whether the assured shall be permitted to bring, before the jury, papers which in themselves are not legal evidence. It is agreed, that the copy of the decree was not, *per se*, evidence. Why then should it be read? Because, say the plaintiffs, it was exhibited to the defendant's broker, as one of the proofs of loss; and it is expected by the underwriters that these proofs of loss should always be exhibited. Upon the same principle, every paper which the assured wishes to read, however improper in itself, may be brought before the jury; for it is in his power to lay before the broker what papers he pleases. Although the underwriters expect that the assured should inform them of all material intelligence received respecting the loss, yet it does not follow that in case of dispute, it is their intention, that illegal evidence shall be introduced at the trial. If the defendant had charged the plaintiffs with improper conduct, in withholding from him the information which they had received respecting the loss, it might be necessary to obviate that objection, by proving that they had lodged the papers with the broker. But the defendant did not deny, that this paper had been communicated. On the contrary, he was willing that the jury should read the indorsement on it, by which it appeared that the broker had received it. It has been said, that the defendant was not injured by reading it to the jury, because they were told by the court, that it was not evidence of any decree having been made. But I am of a different opinion. The reading of it might, and if I may judge from the verdict, did make an impression, which the court could not erase. We are now to establish the rule in cases of this kind; and it appears to me that it will be of dangerous consequence, if papers are thus introduced by a side wind, which not being evidence in themselves, could not be brought forward directly. The distinction of being evidence for one purpose, and not for another, is too subtle for the jury; they will not forget what has been read to them. The case of *Senat* v. *Porter*, 7 *D.* & *E.* 158., was much stronger than this. There the defendant attempted to read in evidence, the captain's

protest, which had been shewn to him by the plaintiff's broker. There was some little plausibility in the argument, that the plaintiff having produced this paper himself, ought not to object to its going in evidence; but the court were clearly of opinion, that it was not evidence. It seems that in that case, the defendant's counsel did not think of the ingenious artifice which has been resorted to here.

I am of opinion, that the paper, which was objected to in this case, ought not to have been read, and therefore there should be a new trial.

YEATES J. concurred.

BRACKENRIDGE J. I am not prepared to dissent from the opinion of the Chief Justice. I admitted the evidence with considerable doubt, and am now satisfied to take the rule as it is laid down by my brethren.

New trial awarded.