## S. A. KELLY v. SUN FIRE OFFICE.

APPEAL BY DEFENDANT FROM THE COURT OF COMMON PLEAS
OF WAYNE COUNTY.

Argued February 26, 1891—Decided March 9, 1891.
[To be reported.]

1. An insurance policy gave the insurer the right to elect, within thirty days after completion of the proofs of loss, whether to replace the building or to pay the loss. The proofs furnished having been returned for correction to the assured, who after some delay made the correction asked for without objection, he was estopped from saying they were complete as originally supplied.

2. When the company, in proper time, gave notice of its election to rebuild, and the assured, denying its right so to do, entered suit to recover the amount of the loss, the company was not bound, pending the suit, to proceed to rebuild or even to attempt to do so, but as a defence to the action might stand upon its right to rebuild, and its election to exercise that right.

3. A stipulation in a policy for the procurement by the assured of a certificate of the nearest magistrate that he believes, after examination, that a loss has been sustained without fraud, is obligatory upon the assured; the dicta upon this subject in Universal Ins. Co. v. Block, 109 Pa. 535, and Davis Shoe Co. v. Insurance Co., 138 Pa. 73, disapproved: the effect of a magistrate's refusal not decided.

Before PAXSON, C. J., STERRETT, GREEN, CLARK, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 204 January Term 1891, Sup. Ct.; court below, No. 122 March Term 1890, C. P.

On April 14, 1890, S. A. Kelly brought assumpsit against the Sun Fire Office, upon a policy issued by the defendant association insuring a building of the plaintiff against fire, dated April 5, 1887. The defendant pleaded non-assumpsit.

The policy contained the following provisions:

"1. Persons sustaining loss or damage by fire shall forthwith give notice of said loss in writing to the society, and as soon thereafter as possible render a particular account of such loss, signed and sworn to by them, stating whether any and what other insurance has been made on the same property, giving

copies of the written portions of all policies thereon ; also, the actual cash value of the property and their interest therein, for what purpose and by whom the building insured or containing the property insured, and the several parts thereof, was used at the time of the loss ; when and how the fire originated ; and shall also produce a certificate, under the hand and seal of a magistrate or notary public nearest to the place of the fire, not concerned in the loss as a creditor or otherwise, nor related to the insured, stating that he has examined the circumstances attending the loss, knows the character and circumstances of the insured, and verily believes that the insured has, without fraud or evil practice, sustained loss on the property insured, to the amount which such magistrate or notary shall certify." . . . .

" 3. If the loss sustained be upon a building, fixtures or machinery, the insured shall, if required, furnish duly verified plans and specifications of such property destroyed or damaged. . . . . If the claim be for building, machinery, and fixtures destroyed by fire, the insured shall procure the duly verified certificate of some reliable and responsible builder, and also of a reliable and responsible engineer, and also of a carpenter or other competent person, which certificate shall give in detail the actual cash value of such building, machinery and fixtures immediately before said fire, and said certificate shall be attached to and form a part of the proofs.

" 4. . . . It shall be optional with the society to take the whole or any part of the articles at their appraised value, and also to repair, rebuild, or replace the property lost or damaged with other of the like kind and quality within a reasonable time, giving notice of its intention so to do within thirty days after completion of the proofs herein required."

" 11. Loss money will be payable at the expiration of sixty days from the date of the adjustment of a claim, unless the society shall have replaced the property damaged or destroyed, or have given notice of its intention to rebuild or repair the damaged premises."

At the trial, on December 13, 1890, the following facts were shown :

The building insured by the policy in suit was destroyed by fire on October 26, 1889. On December 2 or 3, 1889, proofs of loss were furnished to J. H. Fellows, the defendant's adjuster.

They were accompanied by a certificate in the form prescribed by the policy, executed by Robert Smith, a notary public. Mr. Smith was the nearest notary public to the place of the fire, but he resided at a distance of ten miles therefrom, and there was a justice of the peace whose residence was only about half a mile away. Whether any itemized statement from a carpenter and builder, as to the cash value of the building, was attached to the proofs when originally sent in, was a matter of dispute upon the testimony.

The plaintiff testified that he was requested to perfect the proofs by getting a certificate from Stewart O. Lincoln, the nearest magistrate, and that he did so. He did not give the date he received this request. The date of the certificate procured from Lincoln was January 30, 1890. Fellows testified, for the defendant, that the witness returned the proofs to the plaintiff on December 5, 1889, with objections, and received them back about February 1st, with magistrate Lincoln's certificate and the itemized statement of the carpenter and builder attached. Charles A. McCarty, the defendant's local agent, after stating that the witness wrote the certificate signed by magistrate Lincoln on January 30, 1890, testified in rebuttal for the plaintiff as follows: "Q. How long, in your opinion, was it, that this paper came back to you before this affidavit was made which is signed by Stewart Lincoln? A. It was made very soon after I got it. I don't remember just when I got it. Q. Do you think these papers came back to you, or to Mr. Kelly? A. I don't remember exactly. Q. You don't recollect whether they were returned to you or him? A. No, sir."

On February 28, 1890, A. D. Lundy, the defendant's state agent, wrote to the plaintiff, giving him notice of the company's intention to rebuild in accordance with the option so to do given it by the policy, and asking that the plaintiff furnish plans and specifications of the building. On March 19, 1890, such plans and specifications were furnished by the plaintiff, and were transmitted to the state agent accompanied by a letter from the plaintiff's attorney as follows:

"Dear Sir: In yours of February 28th, to Dr. S. A. Kelly, you ask for plans and specifications of Dr. Kelly's building which was destroyed by fire October 26, 1889. You say you intend to replace the property. We send herewith the plans

and specifications of the building, but deny your right, at this late day, to rebuild the property; and, in sending these plans and specifications, it is to be distinctly understood that Dr. Kelly waives no right that he would otherwise have with reference to his claim, or to the enforcement of its collection. And if this claim is not paid forthwith, suit will be brought for its recovery."

At the close of the testimony, the court, SEELY, P. J., instructed the jury in part as follows:

Now, having looked at these conditions of the policy, the question comes, what was done? I have not the dates of these papers that have been given in evidence, but somewhere about the end of December proofs of loss were furnished. These proofs of loss are in evidence here; they were furnished to the company and were returned to the insured with the statement that they were defective in not containing a certificate of the magistrate nearest to the place of the fire, as required by the policy, and also requiring the insured to furnish a detailed statement of the expense of reconstructing the building.

If they had the option to rebuild it, certainly it was right and proper that they should require a statement, detailed statement, of the expense of reconstructing this building; because, until they had that, it was impossible for them to exercise this option. [So far as the certificate of the magistrate is concerned, we are inclined, gentlemen, to relieve you of all consideration of that question. We think, in the case that has been presented to us here, in 109 Pa., the Supreme Court have intended to say—we understand them to say—that no insurance company has the right to require the production of such a certificate from a magistrate or a notary public. We hope they have meant to say this; for, although this in former years was held to be a condition precedent to recovery, it required sometimes of an insured that which was impossible for him to render, and no insurance company has any power over a magistrate or notary public to require him to render such certificate. We think, so far as that certificate is concerned, that the proofs of loss were sufficient.] [3]

Now, the question which seems to us to be the turning question in this case, is with reference to the dates when these

Charge of Court below.

proofs of loss were returned by the company to the insured for correction, and when he returned them corrected to the company. The company, if they desire to exercise their right of option here, must proceed with diligence, promptly; must not allow unnecessary delays ; and the insured, when called upon to act, must act with promptness, and cannot complain if he is the cause of delay. The evidence of Mr. Lundy, refreshing his recollection from his memorandum book, that these proofs of loss were returned on the fifth day of December to Honesdale, with the request for this certificate of the magistrate and this particular itemized statement with reference to the cost of erecting the building, is that the amended proofs of loss were returned to the company on the thirtieth day of January, I think it was. Now, if that be true, there was no negligence on the part of the company at that time ; because, if they received the proofs of loss on the second of December and returned them on the fifth for correction, they returned them certainly with great promptness. If the insured received them on the fifth of December, and then neglected to comply with the request and return the proofs of loss corrected until the end of January, he cannot complain if he is accused of some lack of diligence in this matter. We think, gentlemen, if that statement of the defendant is true, if you believe that these proofs of loss were returned to the insured on the fifth day of December for correction, and the delay from that time was by reason of the plaintiff's want of care and diligence, then we think, under this policy, the defendants would have thirty days from the time of the return to them of the amended proofs of loss, in which to exercise their option to rebuild. It seems that within thirty days from that time they did exercise that option, and notified the plaintiff that they would rebuild that property, restore it. . . . .

What we desire to say is this : That if the delay was the delay of the company; if they withheld these proofs of loss without complaint unreasonably, and so delayed this matter, putting the plaintiff to inconvenience and expense, they might be cut off from the right to exercise the option afterwards by reason of such negligence. The policy gives them the right to exercise that option within thirty days after the completion of the proofs required. If, on the other hand, the delay was that

Charge of Court below.

of the plaintiff, if the proofs of loss were returned on the fifth of December, as it is alleged, and he withheld them, did not return them perfected, as he was required to do, to the defendants, until way on at the close of January, then there was nothing to cut off the defendant from the exercise of that option; then they had thirty days from the time when the plaintiff complied with the requirements of the policy to furnish the proofs of loss, in which to exercise that option, and they did exercise it within thirty days after the time when these additional proofs were furnished.

It seems to me the case turns right there. [If you find, under the terms of this policy, with the instructions we have given you as to the rights of the parties, that the company had not lost this right of option by its negligence, then, having notified the plaintiff of their determination to rebuild, they could not be held liable upon this policy; they could be required to rebuild, but not in this proceeding, and your verdict would necessarily be for the defendant. But, if by their negligence and delay you find that they have lost their right of option, then they would be liable upon this policy, for such sum, not exceeding the amount named in the policy, as would compensate the plaintiff for the loss sustained by the destruction of the building.] [2]

The defendant asks the court to charge you:

1. That, under the undisputed facts in the case, the verdict must be for the defendants.

Answer: We decline that, because we think that this fact that we submit to you is one that must go to the jury. You have the evidence of Mr. Lundy, the evidence of Mr. McCarty, the evidence of Dr. Kelly,—I think they are the three witnesses bearing on the fact, and Mr. Fellows, and the evidence as it stands we think forbids that the court should pass upon that question, and for that reason we must submit the question to you. Take the case, gentlemen, and dispose of it according to the evidence.[1]

—The jury returned a verdict for the plaintiff for $1,874.70. Judgment having been entered, the defendant took this appeal, assigning for error:

1. The answer to defendant's point.[1]

2, 3. The parts of the charge embraced in [ ] [2] [3]

Arguments.

*Mr. E. N. Willard* (with him *Mr. Everett Warren* and *Mr. C. E. Mumford*), for the appellant:

1. If the defendant had the right to replace the building, and properly gave notice of its intention to do so, this judgment must be reversed. The stipulation in the policy giving it that right is valid and binding: Flanders on Insurance, 630; Wood on Insurance, 253; Commonwealth Ins. Co. v. Sennett, 37 Pa. 205. Upon the undisputed testimony, the notice was given within thirty days after the proofs of loss were completed, and there was nothing to submit to the jury. The testimony of Fellows that the proofs were returned for correction on December 5, 1889, within two or three days after they were received by the defendant, is uncontradicted. It is undisputed that the parties negotiated between themselves, in regard to certificates to complete the proofs, subsequent to December 2 or 3, 1889, and that the plaintiff actually furnished perfected proofs on January 30, 1890. Having so acted, he is estopped from saying that his proofs were complete on December 3d, and that his subsequent acts were intended only to throw the defendant off its guard.

2. In submitting the question of laches to the jury, the court instructed them to disregard the question of the magistrate's certificate, as the clause in the policy on that subject was null and void. Such clauses have been sustained and held to be binding by most respectable text writers, and by the courts of England and of our own country: Worsley v. Wood, 6 T. R. 710; 2 Phillips on Insurance, 472; Flanders on Insurance, 586; Wood on Insurance, 710; Columbia Ins. Co. v. Lawrence, 2 Pet. 25; s. c. 10 Pet. 507; Gilligan v. Insurance Co., 87 N. Y. 626; Johnson v. Insurance Co., 112 Mass. 49; Daniels v. Insurance Co., 50 Conn. 551; Williams v. Insurance Co., 19 Ins. Law J. 26; Commonwealth Ins. Co. v. Sennett, 41 Pa. 161; Mueller v. Insurance Co., 87 Pa. 399. See, also, Monongahela Nav. Co. v. Fenlon, 4 W. & S. 205. We are aware of what was said to the contrary in Universal F. Ins. Co. v. Block, 109 Pa. 535, and Davis Shoe Co. v. Insurance Co., 138 Pa. 73. Each of those cases, however, was decided upon the point that the insurance company had waived any objection to defects in the proofs, and the remarks respecting the validity of the clause in question were dicta.

Arguments.

*Mr. George S. Purdy*, for the appellee:

The destruction of the building being total, no detailed proofs of loss were necessary: Lycoming Ins. Co. v. Schollenberger, 44 Pa. 259; Farmers' Ins. Co. v. Moyer, 97 Pa. 441; Home Ins. Co. v. Davis, 98 Pa. 280; American Ins. Co. v. Haws, 20 W. N. 370; German Am. Ins. Co. v. Hocking, 115 Pa. 398. If they were requisite, the original proofs furnished in the present case were sufficient. Substantial compliance with the requirements of the policy on this subject is all that will be exacted: Northwestern Ins. Co. v. Atkins, 3 Bush 328 (96 Am. Dec. 239). The policy leaves it optional with the assured whether he shall obtain the certificate of a magistrate or of a notary public, and he did obtain that of the nearest notary. However, that particular clause of the policy is not binding on the assured: Universal Ins. Co. v. Block, 109 Pa. 535; Davis Shoe Co. v. Insurance Co., 138 Pa. 73.

2. It seems too clear for argument that the clause relating to the certificate of a carpenter and builder was intended to apply to buildings containing machinery, such as machine shops, mills, etc., and if it is susceptible of two constructions, that most favorable to the assured must be adopted: Teutonia Ins. Co. v. Mund, 102 Pa. 89; Burkhard v. Insurance Co., 102 Pa. 262. However, it was a question for the jury whether a sufficient certificate was not furnished with the original proofs. If this view of the case is sustained, it is immaterial whether or not there was evidence of laches on the part of the company in returning the proofs. But there was sufficient in the testimony of McCarty that he returned the certificate of the justice, dated January 30th, soon after getting the proofs back, to justify leaving the question whether the proofs were returned by the company on December 5th, or not until nearly January 30th. Facts and the credibility of witnesses are for the jury: Patterson v. Dushane, 115 Pa. 334; Cover v. Manaway, 115 Pa. 338; Grambs v. Lynch, 4 Penny. 243.

3. Even if the date of furnishing complete proofs was January 30th, as the defendant contends, it does not follow that this action cannot be maintained. The question of the bona fides of the company in giving the notice of intention to rebuild, as evidenced by their subsequent conduct, still remains; as also the question whether the company did not forfeit the right to

Opinion of the Court.

rebuild by not making any move, preliminary or otherwise, towards rebuilding, from the time of giving the notice until after service of the summons, a period of about two months. Such right, if not exercised in the mode prescribed in the policy, is lost: Wood on Insurance, 322. This policy allows its exercise " within a reasonable time ; " what is such, was for the jury. We have found no case where the policy was changed to a building contract, except when the company had entered upon the work of rebuilding, or had been prevented from doing so by the assured: See Flanders on Insurance, 628; Wood on Insurance, 327; Morrell v. Insurance Co., 33 N. Y. 429 (88 Am. Dec. 396); Haskins v. Insurance Co., 5 Gray 432.

OPINION, MR. CHIEF JUSTICE PAXSON :

The policy of insurance, on which this suit was brought in the court below, gave the defendant company the option to rebuild, or pay the amount of loss sustained, in case the property insured was destroyed by fire. The learned judge below conceded its right of option, but left it to the jury to find whether the company had lost its right by its delay in exercising it. The jury found the delay, and, if there was evidence upon this point sufficient to submit, the verdict must stand.

I do not understand the facts to be disputed. Those that are important are substantially as follows : The proofs of loss were forwarded to the adjuster about December 2d, and were received by him two days thereafter. On December 5th they were returned to the plaintiff, who sent them to the company with the corrections asked for, on the thirtieth of January. I find no contradiction of this testimony, and one of the papers which made up the corrections bears that date. They were received by Mr. Fellows, the adjuster, on February 1st. On February 28, 1890, the company served notice on the plaintiff of its intention to rebuild, and called upon him, under the terms of the policy, to furnish plans and specifications for that purpose. The plans and specifications were furnished, but the plaintiff alleged that the option of the company had not been exercised in time, and brought this suit, not upon a contract to rebuild, but for the loss under the policy.

I do not understand the ruling of the court below, or the argument of plaintiff's counsel, to be based upon a denial of

of any of the foregoing facts.  On the contrary, it is assumed that the original proofs of loss were complete, and a full compliance with the conditions of the policy; that the additional proofs required by the company were unreasonable, and that the time limited for the option of the company commenced to run not later than December 5th.  If they are right in this, the company has no defence.

There would have been more force in this position had the plaintiff elected to stand upon his original proofs.  He did not do so, but proceeded to furnish the additional matters required.  Granted that as to any of these matters he had a right to decline further information, he waived such right by furnishing it.  We have repeatedly held that insurance companies may waive the benefit of provisions in their policies by this course of dealing, and it is only fair that we should hold the assured to the same rule.  The company, by the terms of its policy, had thirty days within which to exercise its option, after the completion of the proofs of loss.  The proofs cannot be said to have been completed until the thirtieth of January.  This conclusively appears from the act of the plaintiff himself.  Had he notified the company in December that he regarded his proofs as complete and would furnish no other, the company would not have been misled, but would have been put to its option, assuming that the proofs were sufficient.

We have not entered into the details of the proofs of loss, for the reason that we do not consider it necessary, under our view of the case.  There is one matter, however, to which we will refer.  It is not absolutely necessary to our decision, yet it is fairly raised and assigned as error.  We do so, that the profession may not be misled.

The third assignment alleges that the court erred in the following portion of its charge: "So far as the certificate of the magistrate is concerned, we are inclined, gentlemen, to relieve you of all consideration of that question.  We think, in the case that has been presented to us here, in 109 Pa., the Supreme Court have intended to say—we understand them to say— that no insurance company has the right to require the production of such a certificate from a magistrate or a notary public.  We hope they have meant to say this; for, although this in former years was held to be a condition precedent to

Opinion of the Court.

recovery, it required sometimes of an insured that which was impossible for him to render, and no insurance company has any power over a magistrate or notary public to require him to render such certificate. We think, so far as that certificate is concerned, that the proofs of loss were sufficient."

The case above referred to by the learned judge was Universal Ins. Co. v. Block, 109 Pa. 535. The precise language in the opinion of the court in that case is as follows: "The company had no right to require a public officer to act in the adjustment of its risks, and the neglect of the assured to even ask a certificate from that officer would have been no default." If the learned judge below was misled by the foregoing, he has the consolation of knowing that the writer was equally misled in the recent case of Davis Shoe Co. v. Insurance Co., 138 Pa. 73, where he adopted the language referred to without much reflection, and in the stress of business. Fortunately, whether right or wrong, it has done no injury, as each of those cases was decided upon other sufficient grounds, and the remark may be regarded as dictum. The present seems a fitting time to examine the question, and see if the dictum is law. If not, it is our plain duty, as it is our pleasure, to say so promptly.

We do not think it was error to say that an insurance company "had no right to require a public officer to act in the adjustment of its risks." No such officer could be compelled to do so. This is plain enough. It does not follow that the parties to a policy of insurance may not contract that the insured shall procure a certificate from the nearest magistrate, notary, or other officer. Such contract is not forbidden by any law or rule of public policy. It may be a foolish contract on the part of the assured, but we do not reform men's contracts because of their folly. In the case in hand, the plaintiff did not complain of this clause; on the contrary, he complied with it. While the right of a company to compel a public officer to adjust its loss cannot be successfully claimed, yet, where such a clause exists in a policy by the agreement of the parties, we are not prepared to adopt the expression in Universal Ins. Co. v. Block, that "the neglect of the assured to even ask a certificate from that officer would have been no default." We are not dealing with the case of an attempt on the part of the assured to obtain such a certificate, and the refusal of the officer to give it.

Opinion of the Court.

This is not a new question, and we are therefore spared an extended discussion of it. It is sufficient to refer to the authorities. In 2 Phillips on Insurance, 472, the rule is thus stated: " Fire policies generally have a provision that the assured shall produce certain certificates respecting the loss, which vary considerably, as will appear from the instances to be given. It is, like all express conditions, always to be complied with, unless the right to demand the certificate is expressly or impliedly waived by the insurers." This, I believe, is the rule in all the best books on insurance; it is certainly so in Flanders on Insurance, 2d ed., 586, and in Wood on Insurance, 710. It was also declared in the Court of King's Bench, by Lord Kenyon, C. J., nearly a century ago, in Worsley v. Wood, 6 Term R. 710, and has continued to be the law of England to this day. In Columbia Ins. Co. v. Lawrence, 2 Pet. 25, Chief Justice Marshall sustained a similar provision, and when the same case came before the same court seven years later, the principle was affirmed by Mr. Justice Story: See 10 Pet. 507. The doctrine was squarely affirmed in Gilligan v. Insurance Co., 87 N. Y. 626; Johnson v. Insurance Co., 112 Mass. 49; Daniels v. Insurance Co., 50 Conn. 551. In our own cases of Commonwealth Ins. Co. v. Sennett, 41 Pa. 161, and Mueller v. Insurance Co., 87 Pa. 399, the same rule is recognized, and in the former case the opinion of Lord Kenyon in Worsley v. Wood, supra, is referred to with approval. The only cases cited against this overwhelming weight of authority were Universal Ins. Co. v. Block and Davis Shoe Co. v. Insurance Co., supra. The dictum of those cases must give way before such an unbroken line of decisions.

The moral to be drawn from this is that, in every instance it is wise to study a case with sufficient care to ascertain the very point decided, and not place too much reliance upon the illustrations of the judge who writes the opinion. They are sometimes drawn hastily from the means conveniently at hand, and necessarily, in our great pressure of business, without the examination and reflection which we give to the question decided. I may be allowed to point this moral, for the reason that it is, in part, at least, pointed at myself.

It was urged on behalf of the plaintiff that the defendant company merely announced its election to rebuild, and has not

Statement of Facts.

in point of fact done so, nor has it attempted to do so.   The answer to this is, that its right to rebuild was denied by the plaintiff, and such denial promptly followed by a suit.   The company could not be required to pay and rebuild also.

Our conclusion is that the option to rebuild was exercised in time, and that this suit cannot be sustained.

Judgment reversed.

Argued February 26, 1891—Decided March 9, 1891.