RICHARD EDWARDS, *vs.* THE BALTIMORE FIRE INSURANCE COMPANY.—*June* 1845.

Where there is a formal defect in the preliminary proofs offered by an assured to the underwriter, which could have been supplied had an objection been made by the underwriters to payment on that ground, but the underwriter put his refusal to pay on other grounds, the production of further preliminary proofs will be considered as waived.

Where the answer of the underwriter stated that the proofs were wholly unsatisfactory as to the amount of the loss; that all responsibility was denied by reason of a material concealment as to the character of the risk; that all claim had been forfeited under a particular article of the policy, and he also reserved all objections to recovery in any form, and without intending to waive any of the rights under the policy, this is not a waiver that the notice of the loss by fire was not *"forthwith"* given, and a particular account of the loss or damage, *"as soon after as possible,"* delivered by the assured to the assurers, in conformity to the article in the policy, under which the claim was alleged to be forfeited.

The loss took place in November, and the objection was made in March; notice given, or an account of loss delivered, in March, would not have been a compliance with the policy.

There is no ground for the implication of a waiver of preliminary proof, where the assured could not have supplied the proof, nor remove the objection to the want of it, if the objection had been made. The assured, in such case, can sustain no injury by non-disclosure : He is not lulled into false security, nor prejudiced in the way of fraud or surprize.

Neither will the court imply a waiver, where the answer of the underwriter gives explicit warning and annunciation to the assured, that he designs to waive nothing, and that he must come to trial, fully prepared to prove every thing necessary to his recovery,

The terms, *"forthwith,"* in a policy of insurance, used in connection with giving notice to the underwriter of the occurrence of a loss by fire—and *"as*

*soon as possible*" after a fire occurs, deliver a particular account of such loss, are not to be taken literally, but mean with due diligence, or without unnecessary procrastination or delay, under all the circumstances of the case.

In all ordinary cases, whether due diligence has been used by the assured; or he has been guilty of no unnecessary procrastination or delay, under all the circumstances of such cases, are questions of fact, to be determined by the jury,

It is not analogous to the question of diligence exacted by the law, from the holder of a dishonored note or bill, desirous of fixing the liability of previous parties to such instruments.

A policy of insurance, executed in *Baltimore*, against fire on merchandise in a house at *F*, required the assured *forthwith*, to give notice to the underwriter of any loss. The mail left *F* on Monday, Wednesday, and Friday, for *Baltimore*. The fire took place on *Friday* night, and the assured did not give notice by mail on Wednesday. All the circumstances attending the condition of the property, and the efforts of the assured to collect, and preserve it in its damaged state were left to the jury to determine, whether the assured was not so occupied on *Tuesday*, in doing every thing in his power for the safety and protection of the 'property, as to show, he had neither time nor opportunity to put the notice in the post office, in season for the mail of that day.

Appeal from *Baltimore* county court.

This was an action of *covenant* upon a policy of insurance against fire, brought on the 12th November 1842, by the appellant against the appellee, who pleaded *non infregit conventionem*.

The plaintiff, to support the issue on his part, gave in evidence his application for insurance.

*Baltimore, Sept. 28th, 1839.*

To the PRESIDENT and DIRECTORS of
The BALTIMORE FIRE INSURANCE Co.,

The subscribers want insurance on account of *Richard Edwards*,—desire to be insured against loss or damage by fire, for the term of one year, to the amount of $5000, on the property described below; that is to say, on merchandize, such as is kept in a country store, in a frame building, now occupied by *R. E.*, located between two mountains, standing alone. Frame stable about one hundred yards from the store. A furnace about five hundred yards from store. In *Farrandsville, Clinton County, Pennsylvania*, near the canal. If any loss

should happen, the amount of said loss to be paid to *Hooper & Graff*, they showing a legal claim against the said *Edwards*.

HOOPER AND GRAFF.

"What premium will be required?"—

" $5000, at 1 per cent., $50."

"*Baltimore*, 28th September 1839.—Accepted, HOOPER & GRAFF."

Also :—

Baltimore F. Ins. Office, 1st Oct. 1839.

MR. HOOPER,

*Dear Sir :*—You will please call at the office as soon as you can make it convenient, as I. cannot make out your policy before I see you.     Respectfully,

W. A. TUCKER, *Pres't.*

Baltimore F. Ins. Office, 19th Oct. 1839.

*Dear Sir :*—If you should be passing by my office, please call in.          Respectfully Yours,

W. A. TUCKER, *Pres't.*

Messrs. *Hooper & Graff.*

The policy of insurance, dated 23d October 1839, was in conformity to the order for insurance.

The 7th article of the policy, made it the duty of all persons insured, in case of fire, to do every thing in their power for the safety and protection of the property insured; and all persons insured by this company, sustaining any loss or damage by fire, are forthwith to give notice to the company; and as soon after as possible, to deliver in as particular an account of their loss or damage, signed by their own hands, as the nature of the case will admit; and make proof of the same by their oath or affirmation, and by their books of accounts, and other proper vouchers as shall be reasonably required, and shall make oath whether any, and what other insurance is made on the same property, and shall procure a certificate under the hand of a magistrate, or notary public, (most contiguous to the spot where the fire happened, and not concerned in such loss,) that they are acquainted with the character and circumstances of the person or persons insured, and do know, or verily believe,

that he, she, or they, really and by misfortune, and without fraud or evil practice, have sustained by such fire, loss, or damage to the amount therein mentioned; and until such affidavits and certificates are produced, the loss shall not be payable. So, also, if there appear any fraud or false swearing, the claimant shall forfeit his claim to restitution or payment by virtue of this policy.

The plaintiff also proved the following letters, admitted to have been received by the company:

*Baltimore, Nov. 26th* 1839.

Wm. A. Tucker, Esq., President, &c.

*Sir:*—We, yesterday, received information of the destruction, by fire, of the property insured by you, by policy, No. 5959, (dated per application, Sept. 28th 1839, in the name of *Richard Edwards,*) which insurance was effected by us, and to be paid to us if loss should take place; we shall immediately take steps to procure the necessary proofs of the loss, amount of property destroyed, and furnish you with the same. You will, therefore, hold the same subject to our order and adjustment.

Respectfully yours,     Hooper and Graff.

Also :—

*Baltimore, Dec. 28th* 1839.

Wm. A. Tucker, Esq., President, &c.

*Sir:*—We lay before you this day, papers shewing the loss by fire, on policy No. 5959, which you will examine.

Respectfully,     Hooper and Graff.

Also :—

To the P. and D. of the B. F. Insurance Co.

*Gent:*—You will take notice, that I did, on the 7th December 1839, transfer all my right, title, claim and interest, in policy No. 5959, *(Baltimore Fire Insurance Co.,) to Messrs. Hooper & Graff.* You will, therefore, account to them for the loss sustained on said policy, and their receipt will be good for the same.     Respectfully,

Richard Edwards.

Baltimore, Jan 9th, 1840.

*Baltimore F. Ins. Office, Jan.* 13*th* 1840.

*Dear Sir:*—I wish to see your books and other papers, in relation to your loss under the policy, from this office.

Respectfully,    Wm. A. Tucker, *Pres't.*

P. S.—On reflection, I wish, also, to see the bills of parcels of your purchases.    You will please to call at the office as soon as convenient.    Wm. A. Tucker, *Pres't.*

(*Mr. Richard Edwards, Farrandsville, Clinton* county, *Pennsylvania.*—Care of *Hooper & Graff, Baltimore.*)

*Baltimore, Jan.* 14*th* 1840.

W. A. Tucker, Esq., Pres't B. F. Ins. Co.

*Sir:*—In reply to your note of yesterday, I must beg leave to refer you to Messrs. *Hooper & Graff,* as you are well aware, they are the only persons authorized to settle the claim in the policy, No. 5959.    Richard Edwards.

Also :—

*Baltimore, February* 11*th* 1840.

To the P. and D. of the Baltimore F. I. Co.

*Gent:*—We beg leave respectfully to inform you, that the books of account of *Richard Edwards* of, &c., showing the amount and value of the merchandize covered by your policy of the 23rd of October 1839, No. 5959, and subsequently destroyed by fire, as you have been already advertised, are in our possession, at our office in *North Street,* subject to your examination at your pleasure, for which purpose we will deliver them to you, if desired; and that we are ready to furnish any other proof in addition to that already communicated, which you may reasonably require of the fact and extent of said loss.

We have the honor to be,

Very respectfully, your obedient serv'ts,

Nelson and Buchanan, *Atty's for R. E.*

Also :—

*Baltimore F. Ins. Office, March* 3*rd,* 1840.

To Richard Edwards, Esq.,

*Sir :*—The books and papers you have left for the inspection of the company, to sustain your claim for loss under a policy effected at this office, were so numerous, that I am only able now to state, after their examination, that this company con-

siders them wholly unsatisfactory as to the amount of your claim, even if the company were responsible at all. They deny, however, any responsibility, by reason of a material concealment as to the character of the risk; and even if the policy ever had attached, by reason of the circumstances attending the fire, if any responsibility ever had existed, it has all been discharged, and your claim forfeited under the 7th condition of insurance, annexed to the policy; for you have, on oath, rendered an account of loss, in which you estimate a lot (of goods) at *Lockhaven,* as worth $150;—which, in the first place, was never intended to be included in the policy; and, in the second place, we suppose, was not consumed by fire. With a reservation of all objections to your recovering, in any form, and without intending to waive any of our rights under the policy, we leave you to pursue any course you may deem expedient.                Respectfully,

                                W. A TUCKER, *Pres't.*

The plaintiff offered proof of the location and condition of the store, and its contents; the goods left, after the fire, were removed to an adjacent building; many in a bad condition, soiled and rumpled, and were then in the possession of the sheriff of the county, who had commenced arranging them, for the purpose of making an inventory. The witness, on the next day, (Saturday,) assisted the sheriff, who was then absent two days, and locked up the goods; as soon as the inventory was finished, a copy was made and sworn to by plaintiff. After the inventory and affidavit were finished, they were put into the post office, at *Farrandsville,* directed to *Hooper & Graff, Baltimore,* the inventory and affidavit were procured for the plaintiff, as soon as they possibly could be done. They were engaged two or three days in taking the inventory. Witness, when in *Baltimore,* went to the office of defendant, and there saw the copy of inventory, and which he sent to *Messrs. Hooper & Graff,* from *F.,* in the possession of *Mr. Tucker,* the president of the company. *Mr. Buchanan* stated, that witness was *Mr. Edward's* clerk, and had brought down all the books and papers, and they were now ready to go into an examination of them, to which *Capt. Tucker* replied, he had

no time then for an examination, but would like to have the books and papers sent to the office, so that he could examine them at his leisure. The interview with *Capt. Tucker*, was in the latter part of January or February 1840, and there was but one. Deponent reached *Baltimore* on the *third* day after he left *Farrandsville;* the plaintiff was in *F.*, from the time of the fire until January. The goods were levied on by the sheriff, after the fire, under execution.

Evidence was also given by the plaintiff, of the visit of *Hooper* to the president of the company; the delivery of the inventory and various accounts, and that the loss was disputed by the company, because *Capt. Tucker* contended, in a conversation he had with *Edwards* and *Hooper*, that they had not performed the conditions of the policy, in rendering an account, whereby the company could ascertain the loss; and also complained to *Mr. Hooper*, as the agent of *Edwards*, of the delay in transmitting the account and statement of loss, and *Capt. Tucker* complained to witness, that the company had not been notified of the sheriff's sale, which took place after the fire, so that the company had no opportunity of appointing appraisers, to ascertain the partial loss, as provided for by one of the conditions of the policy.

The plaintiff also proved, the burning of his store on the evening of the 18th November 1839; that the sheriff who levied upon the goods, did not authorise the taking of any inventory, except when he was present; that the plaintiff offered to assist him in taking it, and he had the assistance of his clerk in part. The sheriff took possession on the 21st November 1839, and commenced his inventory on the 22nd, and completed the same on the 14th December. The confusion from the fire, produced much delay. *Edwards* could not have obtained a copy until the sheriff completed his. The sheriff's sale commenced on the 16th December 1839, was adjourned from day to day, and completed 8th January 1840. The inventory comprised about twelve pages of folio paper. The distance from *Lockhaven* to *Farrandsville* is about seven miles. Witness was not certain whether the mail came daily from *F.* to *L.*, or every other day, from the 21st November 1839, to the 1st January 1840. From

*Lockhaven* to *Baltimore,* there was then, and is now, a daily mail. The *F.* and *L.* mail are united at *L.* The sheriff had exclusive possession, on and after the 21st November 1839, of the injured and remaining goods. The plaintiff was not at home on the evening of the fire, he had gone to *Lockhaven,* and returned about 10 o'clock, after the fire. There was a post office at *Farrandsville,* and the mail left there on *Monday, Wednesday* and *Friday* for *Baltimore,* and if no accident happened, a letter would arrive in *B.*, from *F.*, on the night of the *third* day, and be delivered on the morning of the *fourth* day. It was tri-weekly at *F.* in 1832. In the spring of 1840, it was daily. The mail did not leave *F.* regularly, and frequently failed to connect at *Williamsport.* In 1839, there were three contracts for carrying the mail between *F.* and *Northumberland,* which was the distributive office; that *six* or eight days would not be unreasonable from *F.* to *Baltimore,* as the roads were obstructed at that time from the 20th of the month. From *F.*, the mail in December, would be very uncertain. The mails from *N.* to *B.*, in *Baltimore,* were as follows: 15th November, received on the 16th; 17th on the 18th; 18th none; 19th on the 20th; 20th to 27th, each on the day following; to 1st December, none.

The plaintiff also proved, that before the 11th February 1840, his counsel called on the defendants, and requested to see the preliminary proofs of loss, furnished them by the plaintiff, but that the defendants refused to show him the same; and that before the trial of this case, notice was given to the defendants to produce the same in court, which they have refused to do.

The plaintiff prayed the court to instruct the jury:

"That if they believed the facts set out in the foregoing statement, the defendants have waived the adduction by the plaintiff of the preliminary proofs required by the conditions annexed to the policy of insurance, and that such waiver dispenses the plaintiff from now offering evidence of his having furnished the same."

The defendants prayed the courts opinion to the jury as follows:

1st. That if they find, from the evidence, that the house, in which the goods insured were at the application for the insurance, was used as a dwelling house, that then the policy in this case is void under the 2nd article of the conditions annexed to the policy in question, because the description of the same in the application for insurance, was false.

2nd. If the jury find the facts stated in the first prayer, and also find, that if said house had been truly described as occupied as a dwelling, that the risk of the insurance would, in the opinion of the underwriters, have been considered as enhanced, and a higher premium have been charged than was charged in this case, that then the plaintiffs are not entitled to recover, the policy being void under the 2nd article of the conditions of insurance, attached to said policy.

3rd. That the plaintiffs are not entitled to recover, because they have not offered evidence that they forthwith gave notice of the loss to the defendants, or as soon as possible after the fire occurred, delivered to them the particular account of their loss or damage, signed by them, as the nature of the case admitted; and made proof of the same by his oath, and by his books and accounts, and other proper vouchers, as required by the 7th condition attached to the policy.

4th. That the true construction of the policy of insurance in this case, is, that the insurance was effected for the benefit of *Hooper & Graff*, the persons applying for the same as evidenced by the order for insurance of the 28th September 1839, given in evidence by plaintiff, and the terms of the policy itself; and that no recovery can be had in this case for any loss, which the jury may find from the evidence, occasioned to the goods insured, without evidence that said *Hooper & Graff* had a legal claim against said *Edwards*, the plaintiff, and if there be any evidence, then, only to the extent of any such claim as may be shewn by evidence.

The court, (LE GRAND, A. J.,) rejected the prayer of the plaintiff, and also rejected the first, second, and fourth prayers of the defendants, and granted the third prayer of defendants.

To the rejection of the plaintiff's prayer, and the granting of the third prayer of defendants, the plaintiff excepted, and prosecuted this appeal.

The cause was argued before ARCHER, C. J., DORSEY, SPENCE and MARTIN, J.

By NELSON and W. F. GILES, for the appellant, and
By R. JOHNSON and DAVID STEWART, for the appellees.

DORSEY, J., delivered the opinion of this court.

The bill of exceptions taken by the appellant in this cause, is to the county court's refusal to grant the prayer made by him, and to the granting of the third prayer of the defendants.

The plaintiff prayed the court to instruct the jury, "that if they believed the facts set out in the foregoing statement, the defendants have waived the adduction, by the plaintiff, of the preliminary proofs required by the conditions annexed to said policy of insurance, and that such waiver dispenses the plaintiff from now offering evidence of his having furnished the same."

Assuming, that the letter of the defendants, of the 3rd of March 1840, was a flat denial of the plaintiff's right to recover, upon a ground going to the merits of the plaintiff's claim, and having no reference to the preliminary proofs thereof, to be furnished to the defendants, (which, for the plaintiff, is the most favorable light in which it could be regarded,) the plaintiff's prayer was properly rejected by the court. It carried the doctrine of implied waiver of preliminary proofs, far beyond any of the cases referred to in support of it; and farther than it can be legitimately extended upon the principles on which it is founded.

In the case of *Allegre vs. The Maryland Ins. Co.*, 6 *Har. & John.*, 408, the preliminary proof omitted to be furnished to the underwriters, was the invoice of the cargo insured, which, with all the preliminary proofs requisite in that case, were of such a character, that furnishing them by the insured, at the date of the letter from the *Insurance Company*, would have been a sufficient compliance with the provisions of the policy, in respect to the preliminary proofs; and a requisition for their production, could, by the assured, at once have been complied with.

The principles upon which the waiver of preliminary proofs depend, are correctly stated in the case of *McMasters and Bruce vs. The Western Mut. Ins. Co.*, 25 *Wendell*, 382, where the court say, "the law is well settled, that if there be a formal de-

24     v.3

fect in the preliminary proofs, which could have been supplied had an objection been made by the underwriters, to payment on that ground; if they do not call for a document, for instance, or make an objection on the ground of its absence or imperfection, but put their refusal upon other grounds, the production of such further preliminary proofs will be considered as waived." And, speaking of the interviews between the insured and the agents of the company, the court further say, "had the objection been made in the course of these interviews, the defects might at once have been remedied."

In the case of the *Ætna Fire Ins. Co. vs. Tyler*, 16 *Wendell*, 401, Chancellor *Walworth* says, "the law is well settled in this State, that if there is a formal defect in the preliminary proofs, required by the policy or the custom of the place, and which could probably have been supplied, had any objection been made by the underwriters, to the payment of the loss on that ground; if the insurers do not call for the document, or make no objection on the ground of its absence or imperfection, but put their refusal to pay distinctly on some other ground, the production of such further preliminary proof will be considered as waived." And in 2 *Wendell*, 71, *Ocean Ins. Co. vs. Francis*, it is decided, that "where the underwriters make no objection to the sufficiency of proof of interest, but put their refusal, to pay on the ground, that they are not liable for the loss, it is a waiver of preliminary proof of interest." Why is it such waiver? Because, had the objection been then raised, the proof of interest, according to the stipulations of the policy, could then, and would, have been adduced by the assured.

But what is the objection to the sufficiency of the preliminary proofs in the case now before us? It is, that the notice of the loss by fire, was not "forthwith" given, and a particular account of the loss or damage, "as soon after as possible," delivered by the assured to the assurers. Suppose the objection had been raised in the letter of the president of the *Insurance Company*, of the 3rd March 1840, could the appellant have bettered his condition? Would notice then given, or an account of loss then delivered, have been a compliance with the conditions of the policy? Unquestionably not. There is no ground, there-

fore, for the implication of the waiver insisted on by the appellant. He could not have removed the objection, had it been made; he has sustained no injury by its non-disclosure. The conduct of the appellees has lulled him into no false security; has prejudiced him, neither in the way of fraud, nor surprise.

Suppose, however, it were otherwise, and that the objection, if raised, could then have been obviated by the appellant, we think the letter of the underwriters, of the 3rd of March 1840, repels every presumption of any waiver on their part, and is an explicit warning and annunciation to the appellee, that they designed to waive nothing, and that on the trial of any action which he might institute against them, he must come prepared to prove every thing, which, according to the terms and conditions of the policy of insurance, it was necessary to prove, to entitle him to recover.

For the reasons we have stated, we think the county court were right in rejecting the appellant's prayer.

The third prayer of the appellees, to the granting of which the appellant has excepted, is, "that the plaintiffs are not entitled to recover, because they have not offered evidence, that they forthwith gave notice of the loss to the defendants, or as soon as possible after the fire occurred, delivered to them the particular account of their loss or damage, signed by them, as the nature of the case admitted, and made proof of the same by his oath, and by his books and accounts, and other proper vouchers, as required by the seventh condition attached to the policy."

To enable us to judge of the correctness of the court's conduct, in granting this prayer, the meaning of the terms, "forthwith," and, "as soon as possible," as used in the policy of insurance, ought to be ascertained To give to them their literal import, would, in almost every case of loss by fire that occurs, strip the insured of all hope for indemnity for the loss incurred; and policies of insurance against fire, would, as to the insured, instead of being contracts of indemnity, as they profess to be, become engines of fraud and injustice in the hands of the underwriters, and a recovery by the insured, would be rarely, indeed, if ever practicable. Such a construction,

therefore, has not been sanctioned by courts of justice. The true meaning of those terms is, *with due diligence, or without unnecessary procrastination or delay, under all the circumstances of the case.* See *Inman vs. Western Fire Ins. Co.,* 12 *Wendell,* 461, where it was determined that, "forthwith," in such a policy, imposes upon the insured nothing more than what is called due diligence, under all the circumstances of the case;" and *Cornell vs. Le Roy,* 9 *Wendell,* 166, where it was decided, that "the assured is, as soon after the fire as possible, to deliver in a particular account of such loss or damage, and this means no more, than it is to be done with due diligence, under all the circumstances of the case; there is to be no unnecessary procrastination or delay."

In all ordinary cases, whether due diligence has been used by the insured, or he has been guilty of no unnecessary procrastination or delay under all the circumstances of the respective cases, are questions of fact to be determined by a jury. We cannot assent to the proposition contended for by the appellees, that the same transmission of notice of loss necessary to constitute due diligence on the part of the insured in this case, that according to "*The Law Merchant,*" and an unbroken chain of decisions of courts of justice, is deemed due diligence by the holder of a bill of exchange or promissory note, seeking to charge those contingently liable for the payment thereof, viz: that notice must be transmitted to those sought to be charged by it, by the next mail after the dishonor of the bill or note. Such a rule, as an unbending principle of law, has not, and we think ought not, to be applied to contracts like that now before this court. And in reference to such contracts, we entirely concur with the views and principles so perspicuously and forceably stated, in note (*p.*) to page 451, of 1 *Stark. on Ev.,* as follows, "in general, questions of reasonable time, reasonable care, due diligence, probable cause, and such like, depend so much on their own peculiar circumstances as not to admit conveniently of any general rules, and it is of greater convenience to depend on the judgment and discretion of a jury, deciding on a comparison of the circumstances with the ordinary course of practice, or with reference to the ordinary principles of fair

and honest dealing, than to introduce such a multiplicity of legal rules and definitions as would be necessary for the due decision of cases, subject to such infinite variety of circumstances. It is, in truth, a matter of important and obvious policy, rather to refer questions of this nature as matters of fact to a jury, than to frame legal rules applicable to particulars. The difficulty of framing precise rules must, in such circumstances, be very great, for the reasons adverted to, unless they be founded on some prominent and decisive incidents. Whenever the court decides upon circumstances, the decision would become a precedent and rule of law, and as such decision would afford room, by comparison, for a great number of distinctions, the obvious effect would be, to multiply such decisions and distinctions to a very inconvenient and burthensome extent. On the other hand, by abstaining from legal decision, except in cases where some decisive rule or principle of law is clearly applicable, and by adopting in others the inference of the jury, in point of fact, substantial justice is administered in simplicity, and free from perplexity occasioned by nice and subtle distinctions, and conflicting decisions. And this is an advantage, and by no means an unimportant one, incident to the system of trial by jury: the law can thus deal in general definitions and leave the rest as fact to the jury, without multiplying decisions and precedents; but if the judges, and not the jury, were to decide, every decision would become a precedent, and legal distinctions would be multiplied to an excessive extent.''

According to the facts in this case, as appearing on the record, would it be irrational in the jury to conclude, that the plaintiff had been guilty of no want of due diligence in not forwarding a notice of the loss by the mail of Wednesday, by reason of his being so occupied on Tuesday in doing "every thing in his power for the safety and protection of the property insured," which, by the express terms of the policy, he was bound to do, that he had neither time, nor opportunity, to put the notice in the post office in time for the mail of that day.

The defendant's third prayer, withdrawing from the consideration and finding of the jury the question, as to due diligence in giving notice of the loss by fire, and the question whether

there was any unnecessary delay in delivering the particular account of the loss, we think that in granting that prayer, the county court were in error.

But, conceding that we are wrong in the opinion we have expressed, as to the tribunal by which the question of due diligence in giving notice, to the *Insurance Company*, of the time of loss, is to be determined, and that to shew due diligence, the plaintiff must prove that such notice was put into the post office in time for the next mail, (after the fire,) from *Farransville* to *Baltimore*, the county court, in granting the third prayer of the defendants, took that fact from the consideration of the jury, and determined it in the negative; although there was evidence before the jury, from which it was competent for them to find, if they believed from the evidence, the fact so to be, that such notice was put into the post office, in time to have been transmitted in the first mail, after the fire, from *Farransville* to *Baltimore*. On this ground, if all others were wanting, we think there is error in the court below in giving to the jury the instruction prayed for in the defendant's third prayer.

We concur with the county court in its rejection of the plaintiff's prayer, but dissent from its granting the defendant's third prayer, and therefore reverse its judgment.

JUDGMENT REVERSED AND PROCEDENDO AWARDED.