THE CITIZENS' FIRE INSURANCE, SECURITY AND
LAND COMPANY OF BALTIMORE CITY vs. LEAN-
DER Z. DOLL.

*Insurance—What does not constitute a Waiver by
the Underwriter of Preliminary proof of Loss
by the Assured—Statement and affidavit of Loss,
not admissible as evidence in Action on Policy of
Insurance—Preliminary proofs of Loss—Deed by
an Attorney, when not valid—Construction of a
Written instrument—Interest of Partners in Real
estate contributed as part of the Capital of the
concern, but not conveyed to the Firm nor to any
one in Trust for them — A void policy not ren-
dered valid by an Assignment of the holder, with
the assent of the Underwriter.*

Upon the destruction of the property insured, the assignee of the policy
furnished to the insurance company preliminary proofs of the loss, as
required by a condition of the policy, and was informed by letter signed
by the secretary of the company, that the proofs of loss were wholly
unsatisfactory as to the amount of his claim, and while denying all
responsibility on the part of the company by reason of misrepresenta-
tions as to title and property, it reserved all objections to his right to
recover in any form ; and without waiving any rights under the policy,
left him to pursue such course as he should deem expedient. HELD :

That such letter could not be construed into a waiver by the company of
all objections to the preliminary proof of loss.

The statement and *ex parte* affidavit of the assured as to the loss and value
of the property insured, furnished to the insurance company as prelimi-
nary proof, under a condition of its policy, cannot be read to the jury
as evidence, upon the offer of the assured, in an action by him on the
policy.

The preliminary proofs of loss required by an insurance company of the
assured, are not *per se* evidence to the jury of his loss ; they are condi-
tions precedent to his right to recover, and it is for the Court and not

for the jury to decide on their sufficiency; and if in any case, it be necessary to lay the preliminary proofs before the jury, they should be cautioned against considering them as evidence of the fact and extent of the assured's loss.

A deed professing to be made under and by virtue of powers of attorney, and signed by the grantor as attorney, is invalid and therefore inadmissible as evidence of title in the grantee, the powers of attorney not being produced, and it not appearing that they were attested and acknowledged in the same manner as a deed, and recorded with the deed executed in pursuance of such powers of attorney.

Where there is doubt as to the proper meaning of an instrument of writing, the construction which the parties to it have themselves put upon it, is entitled to great consideration; but where its meaning is clear, an erroneous construction of it by them will not control its effect.

By certain articles of co-partnership entered into on the 1st of January, 1867, for the purpose of conducting the business of manufacturing and selling flour, it was agreed that three members of the firm should put in as capital of the concern so much money respectively—the fourth member agreed to put in "his mill property, teams, &c., as his part of the capital," all of which it was agreed should be used in common between them for the support and management of the business, and their mutual benefit and advantage. The amount which each partner was to receive of the gains and profits of the business was stated. The mill property was not conveyed to the partnership, nor to any other person in trust for the partnership. On the 28th of August, 1868, a policy of insurance on this property was taken out in the name of the firm. On the 21st of May, 1869, a deed of this property was executed by an attorney in virtue of powers of attorney from the owner of the property and a mortgagee thereof, to a member of the firm, to whom also, on the 24th of the same month, the policy of insurance was assigned or transferred with the assent of the underwriter. On the 3d of June following, the property was destroyed by fire; previous to which event the partnership had been dissolved. In an action on the policy by the assignee, it was HELD:

1st. That there was no partnership of the mill-property itself, and the only interest that the members of the firm, other than the real owner, had in it, was its temporary use and employment.

2d. That upon the dissolution of the partnership, the partnership use of the property ceased, and the real owner resumed its exclusive use and control.

3d. That as the firm had no estate or title in the property at the time they applied to have it insured, but only a temporary use of it, and yet they

represented the property as *theirs*, and it was so stated in the policy, the policy was absolutely void from the beginning, under its conditions which provided that if the interest of the assured in the property was not truly stated in the policy; or if such interest were any other than the entire, unconditional, and sole ownership of the property, it must be so represented to the assurers, and so expressed in the written part of the policy, or else the policy should be void.

4th. That as the parties making the assignment had no interest at the time in the subject of the policy, they could assign none. The policy being void in their hands, it was equally so in the hands of the assignee; and the mere assent of the insurers to the assignment did not render valid the policy which was before utterly void in the hands of the assignors.

APPEAL from the Superior Court of Baltimore City.

The nature of the case is stated in the opinion of the Court.

*First Exception*—The plaintiff, to maintain the issue on his part, offered in evidence the policy of insurance, the eighth condition of which is as follows:

" 8. In case of loss the assured should use their best endeavors in saving and protecting the property from damage at and after the fire; if they shall fail so to do, this company shall not be liable for such damage caused by such failure. The assured shall forthwith give notice of said loss to the company, and as soon after as possible render a particular account of such loss, signed and sworn to by them, stating whether any and what other insurance has been made on the same property, giving copies of the written portion of all policies thereon, the actual cash value of the property, their interest therein, for what purpose and by whom the building insured, or containing the property insured, and the several parts thereof was used, when and how the fire originated, and shall also produce a certificate under the hand and seal of a magistrate, notary public, or commissioner of deeds, (nearest to the place of the fire, not concerned in the loss as a creditor or otherwise, nor related to the assured,) stating that he has examined the circumstances attending the loss, knows the character and circumstances of the assured, and verily

believes that the assured has, without fraud, sustained loss on the property insured to the amount which such magistrate, notary public, or commissioner of deeds shall certify. And until such proofs, declarations and certificates are produced, and the examinations and appraisements permitted, the loss shall not be payable."

The policy was assigned or transferred to the appellee on the 24th of May, 1869, with the assent of the appellant. The plaintiff also offered in evidence articles of agreement between Charles W. Floeckher, John Fangmyer, George T. Castle and the appellee, trading as Fangmyer, Doll & Castle, dated the 18th of March, 1869, wherein it was agreed that Floeckher would execute to Milton G. Urner a power of attorney authorizing him to foreclose a mortgage, given by said Floeckher to said Castle, embracing the property insured. By the agreement the parties thereto were mutually released as between themselves, from liabilities under the articles of co-partnership, dated the 1st of January, 1867, which were also put in evidence. The plaintiff then proved the destruction of the mill by fire on the 3d of June, 1869; and proved by John Heck that he had been working as a millwright for forty-two years, that he had re-built the mill in 1861, and had examined the ruins after the fire; that he was entirely familiar with the mill, which had the best machinery and was the best mill in Frederick county. The plaintiff then asked the witness how much it would have cost to replace the mill, machinery, &c., enumerated in the policy. The defendant objected; the Court (Dobbin, J.) overruled the objection and the defendant excepted.

*Second Exception*—The witness Heck answered the question in the foregoing bill of exception and stated that it would cost $16,700, without reference to the steam engine and boiler. To the admission of this answer the defendant excepted.

*Third Exception*—The plaintiff then testified that on the 9th of June, 1869, he called at the appellant's office and left

a copy of the proofs of loss; that on the 15th he called again and asked the secretary of the appellant if the proofs were all right, and the secretary answered they were. On cross-examination the plaintiff stated that Charles W. Floeckher was a member of the firm of Fangmyer, Doll & Castle, at the time he executed to George T. Castle the mortgage of the insured property — that a difficulty occurred between Floeckher and his co-partners in December, 1868; that Floeckher's interest ceased at the time of the sale of the property by Milton G. Urner, attorney, to the witness— (the deed from Urner to the plaintiff bore date the 21st May, 1869;) that at the time of the formation of the partnership between Floeckher, Fangmyer, Castle and the plaintiff, the mill property was subject to a mortgage to the Farmers and Merchants' Bank of Frederick for $4,000. The plaintiff further offered in evidence his former claim of loss, signed and sworn to by himself, which was furnished to the defendant as preliminary proof—it stated the amount insured on each item, as described in the policy, the transfer or assignment of the policy to the plaintiff, the other insurances on the same property, the amount claimed of the defendant; that the actual cash value of the property at the time of the fire was $16,707.20 as set forth in detail in a schedule thereto annexed; that the property belonged to the plaintiff, and no other person or party had any interest therein. The schedule annexed was a detailed statement of John Heck, as to what it would cost to re-build the mill. To the admission of this statement of the plaintiff, as evidence, the defendant objected, and at the same time the plaintiff produced the following letter from the secretary of the defendant:

"BALTIMORE, *July 8th,* 1869.

"L. Z. DOLL, Esq.:

"*Dear Sir:*—The proofs of loss furnished by you to this company, are wholly unsatisfactory, as to the amount of the claim, even if the company be responsible at all. The com-

pany, however, denies any responsibility by reason of material representations as to the title and property, being untrue, and for other reasons. With a reservation of all objections to your recovering in any form, and without waving any of the rights of the company under the policy, we leave you to pursue such a course as you may deem expedient.

Respectfully,          WM. SHANNON, *Sec'y.*

· The Court overruled the objection on the ground that the letter of the secretary of the defendant, was a waiver of all objection to the proofs, and permitted the same to be read to the jury. The defendant excepted.

*Fourth Exception*—The plaintiff offered in evidence a deed to himself from Milton G. Urner, as attorney, the character of which is stated in the opinion of the Court. To the admission of this deed the defendant objected; the Court overruled the objection and the defendant excepted.

*Fifth Exception*—The defendant then, to maintain the issue on its part, offered in evidence the original application for insurance, the signatures of which were admitted to be genuine, a certified copy of a mortgage of the insured property from Charles W. Floeckher to George T. Castle, also a certified copy of a mortgage of the same property from Floeckher to the Farmers and Merchants' Bank of Frederick, and the articles of co-partnership between Floeckher, Fangmyer, Castle and the plaintiff. The defendant then offered to read to the jury the joint answer of Fangmyer, Castle and the plaintiff to the bill of complaint of Charles W. Floeckher, filed against them in the Circuit Court of Baltimore city. The plaintiff objected and the Court refused to allow the answer to be read; the defendant excepted.

*Sixth Exception*—The plaintiff offered the following prayer which was granted:

"If the jury find from the evidence in the cause, the execution of the articles of co-partnership offered in evidence, and of the deeds from Clarke to Floeckher and from Urner to

Doll and that Doll went into possession of the property, and also the execution of the policy and the assignment thereof to the plaintiff, with the assent of the defendant, and that the property insured was on or about the 3d of June, 1869, destroyed by fire, then their verdict must be for the plaintiff."

The defendant offered twelve prayers, the first of which was granted with the plaintiff's prayer as a qualification, the others were rejected.

These prayers it is deemed unnecessary to insert—the questions raised by the rejected prayers were not considered by the Court.

To the granting of the plaintiff's prayer, the defendant excepted, as also to the qualification of its first prayer and to the rejection of its other prayers. Judgment was given for the plaintiff and the defendant appealed.

The cause was argued before BARTOL, C. J., BRENT, ALVEY and ROBINSON, J.

*Samuel Snowden* and *John Carson*, for the appellant.

The true rule for damages on a policy of insurance is the actual cash value of the property at the time of the loss. The contract of insurance being one of strict indemnity for loss sustained, any other rule would enable the insured to recover more than he had lost. *Elmaker vs. Franklin Ins. Co.*, 5 *Penn.*, 183; *Bimler vs. Nat. Ins. Co.*, 11 *Met.*, 195; *Commonwealth Ins. Co. vs. Sennet*, 37 *Penn.*, 208; *Flanders on Fire Ins.*, 550.

The question put to the witness Heck, and his answer thereto, puts the recovery upon the replacing of the property lost by a new mill and complete machinery. If the mill and machinery were old and worn out, the appellee would, upon this theory, recover a new mill and new machinery. The appellee relied upon the testimony of the witness Heck, and offered no other proof of the amount of his loss. Clearly, under the foregoing authorities, the question stated in the

first exception, and the answer stated in the second, should have been rejected.

The preliminary proofs are not evidence to go to the jury of the amount of the loss of the insured. *Lycoming Co. vs. Schaffer*, 42 *Penn. S. R.*, 181 ; *Newmark vs. L. & S. Fire Ins. Co.*, 30 *Mo.*, 160 ; *Yonkers & N. Y. Fire Ins. Co. vs. Hoffman Fire Ins. Co.*, 6 *Robt.*, 316 ; *Commonwealth Ins. Co. vs. Sennet*, 41 *Penn. S. R.*, 161 ; *Sexton vs. Mar. Mut. Ins. Co.*, 9 *Barb.*, 191.

If the letter of the secretary of the appellant was a waiver on its part of the right to demand preliminary proofs, it dispensed with them altogether, and did not authorize their use as evidence. But the letter of the secretary was not a waiver of the right to demand such proofs. It told the appellee that "*the proofs* of loss furnished by him *were wholly unsatisfactory as to the amount of claim*"—thus calling his attention to the specific objection. The condition of the policy required him to furnish "a statement of the *actual cash value of the property* lost," but instead of doing this, he sent a statement of what Mr. Heck said, a new mill and machinery would cost— no statement of any kind of the loss he had sustained, but only what a millwright would agree to build a new mill and furnish new machinery for. The letter warned him that the company reserved all objections to his recovering in any form, and made it his duty to prepare himself with everything necessary to fully make out his case. *Edwards vs. Balt. Fire Ins. Co.*, 3 *Gill*, 186.

An attorney cannot in his own name convey the property which he is authorized to sell, but the deed must be in the name of the principal. *Harper vs. Hampton*, 1 *H. & J.*, 622 ; *Smith vs. Perry*, 1 *H. & J.*, 700.

The deed from Urner, attorney, did not operate to convey to the appellee any interest in the insured property, and therefore was not admissible as evidence of title. The property at the time of the loss belonged to Charles W. Floeckher, and therefore no stranger to the title could maintain an action for

the loss of property in which he had no interest, and the paper offered being void could be no evidence of any interest in the appellee. It is well settled, that unless the party to whom a policy of insurance is issued has some interest, either legal or equitable, in the property insured, the policy will not attach.

The Court qualified the first prayer of the defendant which embodied this proposition, by the prayer of the plaintiff, which qualification was erroneous. It assumed that the assignment from Fangmyer, Doll & Castle to the appellee, with the assent of the company, vested in him the right to collect the insurance money, although the policy was void in the hands of his assignors. No notice of the numerous changes of the title—no knowledge, on the part of the company, of the facts which made the policy void were required to be found by the jury, but the assignment and assent only, they were told was sufficient to entitle him to recover. Thus clearly disregarding the well settled rule that no one is held to have waived his rights until it can be shewn that he has done so with knowledge of them. *Angell on Ins.*, sec. 219; 2 *Am. Leading Cases*, 522.

A policy void in the hands of the holder is void in the hands of an assignee with consent of the company. *Eastman vs. Carroll Co. Ins. Co.*, 45 *Me.*, 307.

The firm of Fangmyer, Doll & Castle, never had any interest in the property; it was purchased by Floeckher, stood in his name, and was treated by the firm as his private and separate property. He was allowed to mortgage it and deal with it in all respects as his own, and it was all the time at his risk. As, therefore, the co-partnership had no interest at the time of issuing the policy, either legal or equitable, the policy never attached. It was void in its inception, and the mere assent of the company, without knowledge of the facts, could not create a new and independent agreement so as to revive a defunct policy in favor of the assignee, especially when that assignee was one of the original parties.

*William A. Fisher,* for the appellee.

The cost of replacement of the property consumed, was some evidence to go to the jury and was properly admitted.

Both the answer of the secretary of the appellant on the 15th of June, 1869, and his letter of July 8th, 1869, constituted a waiver of the preliminary proof. *Allegre vs. Md. Min. Co.,* 6 *H. & J.,* 408 ; *Edwards vs. Balt. Fire Ins. Co.,* 3 *Gill,* 176 ; *Franklin Ins. Co. vs. Coates,* 14 *Md.,* 285 ; *Van Deusen vs. Charter Oak Co.,* 1 *Abb. Pr., N. S.,* 349 ; *Ætna Ins. Co. vs. Tyler,* 16 *Wend.,* 401 ; *McMaster vs. Western Ins. Co.,* 25 *Wend.,* 382.

The answer of the plaintiff and others to the bill of Floeckher was inadmissible. It was offered in order to prove the construction placed by the defendant on the co-partnership articles, and this was not allowable. *Ringgold vs. Ringgold,* 1 *H. & G.,* 74.

The mortgage from Floeckher to Castle worked no change in the title of the firm of Fangmyer, Doll & Castle in the property. It operated only upon Mrs. Floeckher's dower, and Mr. Floeckher's co-partnership interest in the mill property as one of the assets of the partnership. The firm held the equitable title before, and they still retained it. Besides a mortgage could not be considered such a change in title as to effect the insurance ; especially as the mortgage introduced no new party. *Washington Ins. Co. vs. Kelly,* 32 *Md.,* 421 ; *Conoon vs. Mut. Ins. Co.,* 1 *N. Y.,* 290.

The assent of the appellant to the assignment to the appellee, constituted a *new contract* between them, and entitled the appellee to recover on the policy. *Flanders on Fire Ins.,* 371, 437–439 ; *Wilson vs. Hill,* 3 *Met.,* 66 ; *Foster vs. Equity Ins. Co.,* 2 *Gray,* 216 ; *Fogg vs. Middlesex Ins. Co.,* 10 *Cush.,* 337 ; *Harper vs. Hudson R. Ins. Co.,* 17 *N. Y.,* 234 ; *Hale vs. Mich. Ins. Co.,* 6 *Gray,* 169 ; *Doring vs. Manuf. Ins. Co.,* 8 *Gray,* 28 ; *City Ins. Co. of Hartford,* 45 *Ill.,* 482 ; *Sanders vs. Hillsborough Ins. Co.,* 44 *N. H.,* 338.

ALVEY, J., delivered the opinion of the Court.

This action was brought by the appellee against the appellant, upon an assigned policy of insurance, dated the 28th of August, 1868, and which was issued to the partnership firm of Fangmyer, Doll & Castle, against damage by fire, to a flour mill, machinery and fixtures, in Frederick county, to the amount of fifteen hundred dollars, for the period of one year from the date of the policy.

In the policy, it is declared that it was made and accepted in reference to the provisions and conditions thereto annexed, which are declared to be a part of the policy, and warranties on the part of the assured, and which are to be used and resorted to, in order to explain the rights and obligations of the parties, in all cases not otherwise specially provided for. Annexed to the policy are the conditions, and among which we find, that any omission to make known every fact material to the risk, or any misrepresentation whatever, either in the written application or otherwise, or if the premises should be occupied or used, so as to increase the risk, or become vacant and unoccupied, without the assent of the assurers indorsed on the policy; or if the property should be sold or transferred, or any change take place in the title or possession, whether by legal process or judicial decree, or voluntary transfer or conveyance; or if the interest of the assured in the property, whether as owner, trustee, mortgagee, lessee, or otherwise, be not truly stated in the policy; then, and in every such case, the policy to be void. By the fifth condition it is further provided, that if the interest of the assured in the property be any other than the entire, unconditional and sole ownership of the same, for the use and benefit of the assured, it must be so represented to the company, and so expressed in the written part of the policy, or otherwise the policy to be void. And, in reference to the account of the loss, and the preliminary proof thereof, it is made an express condition, that the assured should, as soon as possible after the fire, render a particular account of the loss, verified by

signature and oath, and state therein the actual cash value of the property, their interest therein, for what purposes and by whom the building was used, and when and how the fire originated, &c.

The policy was assigned or transferred to the appellee, one of the members of the firm to whom it issued, on the 24th of May, 1869, with the assent of the appellant. The fire occurred, by which the mill was destroyed, on the 3d of June, 1869. And on the 9th of June, 1869, the appellee tendered his statement and preliminary proof of loss to the company; and it is upon this that the first material question arises in the cause.

The appellee claims as purchaser of the property and assignee of the policy; and while he states in his claim of loss that he was the sole owner of the property destroyed, and that no other person or party had any interest therein, he failed to make and set forth a particular statement of his loss, as required by the condition, and simply referred to a statement of a millwright as to what it would cost to rebuild the mill. And, upon this statement being objected to by the appellant, as insufficient and therefore inadmissible, the appellee, to obviate and remove all ground of objection, produced and offered to read, in connection with the statement, the letter from the appellant's secretary, dated July the 8th, 1869. The appellant persisting in its objection, the Court overruled it, on the ground, as stated in the bill of exception, that the letter of the secretary was a waiver of all objection to the preliminary proof, and accordingly, the statement as offered was allowed to be read to the jury as evidence. It was to this ruling of the Court that the third bill of exception was taken.

Two objections are urged to the correctness of this decision of the Court below; first, that the preliminary proof was clearly defective, and that the letter produced by the appellee did not operate a waiver of such defect; and, secondly, that it was error, even if the statement offered be admissible as

preliminary proof, to allow it to be read to the jury as evidence in the cause.

1. The preliminary proof offered by the appellee was clearly defective. Indeed, it has not been contended that it was such, in all respects, as was required by the eighth condition of the policy. But it is insisted that all defects have been waived, and the letter is relied on as having that effect.

There is no doubt of the general proposition, that if the refusal to pay the loss, or to acknowledge liability, by the assurers, be placed on other and distinct grounds than the insufficient or defective proof furnished, a waiver of such proof will be implied. *Allegre vs. The Md. Ins. Co.,* 6 *H. & J.,* 408; *The Md. Ins. Co. vs. Bathurst,* 5 *G. & J.,* 159; *Edwards vs. The Balto. Fire Ins. Co.,* 3 *Gill,* 176; *Tayloe vs. The Merchants' Fire Ins. Co.,* 9 *How.,* 390. But in this case we do not comprehend how such waiver can be implied from the letter of the secretary of the company, when it expressly informed the appellee that the proofs of loss furnished by him were wholly unsatisfactory, as to the amount of his claim, and while the company denied all responsibility, by reason of misrepresentations as to title and property, it reserved all objections to the appellee's right to recover in any form; and, without waiving any rights under the policy, it left the appellee to pursue such course as he should deem expedient. The terms of this letter seem to have been taken from that sent by the insurance company to the assured, in the case of *Edwards vs. The Balto. Fire Ins. Co.,* 3 *Gill,* 176, in reference to which, as implying a waiver, the Court of Appeals said, that it repelled every presumption of any waiver on the part of the company, and was an explicit warning and annunciation to the assured, that they designed to waive nothing, and that on the trial of any action which he might institute against them, he must come prepared to prove every thing, which, according to the terms and conditions of the policy, it was necessary to prove, to entitle him to recover. The same may be said of the letter in this case; and that all ground for

implying waiver is expressly excluded by the guarded terms employed. The Court was therefore in error in supposing that the letter of the 8th of July, 1869, effected a waiver of the prescribed preliminary proof of loss.

2. The Court not only decided that there had been a waiver of all defects in the preliminary proof, but that the statement and *ex parte* affidavit of the appellee, as to loss and value of the property, furnished to the appellant as preliminary proof under the eighth condition of the policy, should be read to the jury as evidence in the cause. In this we think there was also error, even if the defects had been waived, or if such proof had been perfect and regular. It is true, the fact as to whether preliminary proofs have been furnished, or have been furnished in time, is for the jury, in cases where such questions arise; (*Franklin Fire Ins. Co. vs. Hamill, 6 Gill,* 87;) and questions of waiver of such proof, when they depend upon mere parol evidence of facts and circumstances, are likewise for the jury, under the instruction of the Court. But the preliminary proofs as such are not *per se* evidence to the jury, of the plaintiff's loss. They consist of the *ex parte* statements of the plaintiff himself, and he is not allowed, by any rule of evidence, such facility of furnishing evidence in his own behalf. These proofs are conditions precedent to the plaintiff's right to recover, and it is for the Court, and not the jury, to decide on their sufficiency. This has been repeatedly decided. In the case of *The Commonwealth Ins. Co. vs. Sennett,* 41 *Penn. St. Rep.,* 161, the Court, in speaking of the preliminary proofs, and the manner in which they were produced and used at the trial, said: "They are conditions precedent, and for the Court, and being in writing, the question of sufficiency is to be decided by them. If they are not sufficient the cause is at an end, unless they have been expressly or impliedly waived by the defendants. If they are waived, the case proceeds without them, but here the attempt is, when they are not objected to as insufficient, to turn an entirely *ex parte* statement of the plaintiff into *primâ facie*

evidence of the most important part of their case.  A *primâ facie* case uncontradicted is conclusive." See also *Thurston vs. Murray*, 3 *Binn.*, 326 ; *Lycoming Ins. Co. vs. Schreffer*, 42 *Penn. St. Rep.*, 188 ; *Sexton vs. Mut. Ins. Co.*, 9 *Barb.*, 191 ; *Howard vs. The City Fire Ins. Co.* 4 *Denio*, 502.   If, in any case, it be necessary to lay the preliminary proofs before the jury, they should be cautioned against considering them as evidence of the fact and extent of the plaintiff's loss.   But in this case such proofs were allowed to be read in evidence generally, and without any restriction whatever, the jury being left to consider them as they thought proper.

Having disposed of the third exception, we come now to the fourth, which was taken to the admissibility in evidence of a deed from Urner, as attorney, to the appellee, for the mill property embraced in the policy.   The deed is dated the 21st of May, 1869, and professes to be made by Urner, under and by virtue of powers of attorney from Floeckher and Castle.   Urner is described in, and has signed the deed, as attorney, as directed by section 27, of Article 24 of the Code. But the powers of attorney were not produced, and it does not appear that they were " attested and acknowledged in the same manner as a deed, and recorded with the deed executed in pursuance of such power of attorney."   This the Code, Article 24, section 25, requires, in order to give validity to the deed ; and unless the powers of attorney referred to were so attested, acknowledged and recorded, the deed is of no validity.   It is only by the power of attorney that the real owner is connected with the conveyance, and it is by and through the medium of such power that the title is transferred.   The deed of itself is without operation, and the recitals in it can prove nothing either as against the real owner or third persons.   The Court was in error, therefore, in admitting the deed in evidence.

The fifth exception was taken to the exclusion by the Court of the answer of Fangmyer, Doll & Castle, to the bill of complaint of Floeckher, filed against them in the Circuit

Court of Baltimore city. In excluding this answer, we think the Court below was in error, for reasons that will be stated in disposing of a question arising on the next exception.

By the deed in evidence from Clarke, dated the 27th of February, 1863, the title to the mill-property is shewn to have been conveyed to Floeckher, and that he held such title at the date of the policy sued on, subject to a mortgage to the Farmers and Mechanics' Bank of Frederick county. Various documents were put in evidence, and among them were the articles of co-partnership between Floeckher, Fangmyer, Doll & Castle, dated the 1st of January, 1867, forming and providing for a co-partnership for the period of five years. Also a mortgage by Floeckher to Castle, of the mill-property embraced by the policy, dated the 29th of October, 1868; also, articles of agreement between Floeckher, Fangmyer Doll & Castle, dated the 18th of March, 1869, wherein the mill-property is expressly recognized as the separate property of Floeckher, subject to the mortgage to Castle, and by which agreement the parties were mutually released, as between themselves, from liabilities under the articles of co-partnership. The original application for insurance by Fangmyer, Doll & Castle, was also given in evidence by the appellant, wherein the applicants described the property as *theirs*.

Upon the whole evidence, the appellee prayed the Court to instruct the jury, that if they should find the execution of the articles of co-partnership, and of the deeds from Clarke to Floeckher, and from Urner to Doll, and that the latter went into possession of the property, and also the execution of the policy, and the assignment thereof to Doll, the plaintiff, with the assent of the defendant, and that the property insured was on or about the 3d of June, 1869, destroyed by fire, then their verdict *must be for the plaintiff.* This prayer was granted, and it was to the granting of this prayer of the plaintiff, and the refusal of some eleven prayers on the part of the defendant, that the sixth exception was taken.'

From what we have said in regard to the deed from Urner to the appellee, it necessarily follows that the prayer just recited was erroneous, and should not have been granted. It was through that deed that the appellee attempted to show title in himself at the time of the loss. But, in the view we have of this case, there is another well founded objection to this prayer, which renders it fatally erroneous, and which dispenses with the necessity of considering any of the several questions raised by the rejected prayers of the appellant.

By the articles of co-partnership already referred to, the business of manufacturing and selling flour, was to be conducted under the firm name and style of Fangmyer, Doll & Castle. By these articles, Fangmyer agreed to put in as capital of the concern $5,221 ; Doll the sum of 11,275; Castle the sum of $11,565; and Floeckher agreed to put in "his mill-property, teams, &c., as his part of the capital of said concern," all of which, it was agreed, should be used in common between them for the support and management of the business, and their mutual benefit and advantage. Floeckher was to purchase grain and operate the mill in Frederick county, and make consignments of the flour to Fangmyer, Doll & Castle in Baltimore, who were to sell it on account of the firm; and the parties were required to render mutual accounts of all their transactions. Floeckher was to receive of the gains and profits of the business, the one-fifth of the whole, and the balance to be divided equally between Fangmyer, Doll and Castle.

The mill-property was not conveyed to the partnership, nor was it conveyed to any other person in trust for the partnership; and the first question that occurs, in the construction of the articles of co-partnership is, what right or interest did the firm of Fangmyer, Doll & Castle acquire in such property, and what right and estate had they at the date of the policy of insurance?

In the articles, no valuation was placed on the mill-property, teams, &c., but they were put in as part of the capital

of the concern, to be used in common for the support and management of the business. What is the meaning of this? Was it designed and understood by the parties that the entire right and estate of this property should pass to and form part of the capital of the partnership, to which all the rights and liabilities of the partnership should attach, or was it designed that the contribution of Floeckher to the capital stock should consist only of the use and employment of this specific property for the business during the continuance of the partnership? It was not necessary to put the property itself into the common stock; the capital, in part, could well consist of the mere use of the property owned by one of the individual members of the firm. In such case, the title, both legal and equitable, remains in the individual member, subject to the particular use and appropriation, during the continuance of the partnership, and upon its dissolution, the property is freed of such use. There is no partnership of the property itself, and the only interest that the members of the partnership, other than the real owner, have in it, is the temporary use and employment of it. *Champion vs. Bostwick,* 18 *Wend.,* 183; *French vs. Styring,* 2 *C. B.,* (*N. S.,*) 357; *Parsons on Part.,* 44, 48, 55, *in notes.* This we take to be the purport, though somewhat obscurely and inaptly expressed, of the agreement of the parties in this instance. The property itself was not intended to be made partnership property, but only its use. Upon the dissolution of the partnership, which, according to the appellee's own testimony, occurred before the fire, this use of the property ceased, and the real owner resumed its exclusive use and control. This construction of the articles of co-partnership is rendered free from all doubt, if we look to the acts and conduct of the parties themselves. It appears that they never supposed for an instant that the property had become partnership property, and therefore subject to all the rights and liabilities of the partnership. They did not so treat it; for, on the 29th of October, 1868, we find Floeckher making a mortgage to Castle of the property for $12,000;

and in the agreement of the 18th of March, 1869, to which all the partners were parties, the mill-property is dealt with and described as belonging to Floeckher alone.   And as still more decisive of the understanding of the parties, in the sworn answer of Fangmyer, Doll and Castle, to the bill in equity of Floeckher against them, they say, "that whatever may be the common import of the words contained in the compact of co-partnership, it was the meaning thereof, and the thought of the parties thereto, that the said Floeckher should contribute to the co-partnership *the use of his mill-property, teams, &c., so long as it might last;*" and they further averred that Floeckher "contributed nothing to the prosecution of the business but his personal services, and the rent or use of his mill, teams, &c."   This answer was objected to and excluded by the Court, as we have already seen, but, as we have said, we think it was admissible, not as evidence to the jury, but as an aid to the correct interpretation of the articles of co-partnership, which, as it did not depend upon other than written evidence, was a question exclusively for the Court.   And although it is very true, as contended by the appellee, that where an agreement is plain and free from all ambiguity, it will not be construed by the acts and admissions of the parties in reference to it, yet, where the intention is obscure or doubtful, and extrinsic evidence can be invoked, no evidence is more reliable or entitled to greater consideration, as manifesting what their intention was, than the acts and conduct of the parties themselves.   As was said by the Supreme Court, in the case of the *Railroad Co. vs. Trimble,* 10 *Wall.,* 367, where there is doubt as to the proper meaning of an instrument, the construction which the parties to it have themselves put upon it, is entitled to great consideration; but where its meaning is clear, an erroneous construction of it by them will not control its effect.   The same principle of construction was fully stated by Chief Justice SHAW, in the case of *Fogg vs. The Middlesex Mut. Fire Ins. Co.,* 10 *Cush.,* 337.

Seeing, then, that the firm of Fangmyer, Doll & Castle had no estate or title in the property at the time they applied to have it insured, but only a temporary use of it, and that, notwithstanding this fact, they represented the property as *theirs*, and it was so stated in the policy, it follows that, by the second and fifth conditions, the policy was absolutely void from the beginning. These conditions provide, as we have already stated, that if the interest of the assured in the property is not truly stated in the policy; or, if the interest of the assured in the property be any other than the entire, unconditional and sole ownership of the property, it must be so represented to the assurers, and so expressed in the written part of the policy, or else the policy to be void. Here there was an entire misrepresentation as to the nature and character of the interest of the assured in the property. They even failed to disclose the name of the real owner, or that he was in any manner connected with the partnership. And the loss having occurred after the dissolution of the partnership, even the temporary interest of the firm in the mere use of the property had ceased to exist; and the appellee does not even pretend to have derived his right to the property through the partnership, but from Floeckher, the real owner at the time the policy was obtained.

This difficulty in the case, however, is sought to be obviated and removed, upon the theory that the assignment of the policy to the appellee, with the assent of the appellant, operated as and constituted in fact and in law a new contract between the parties to this cause, and that all antecedent causes for avoiding the policy are excluded. But to this proposition we cannot assent, as being applicable to a case like the present, if it can be applied to any case, in the sense and to the extent contended for by the appellee.

In this case, the risk contemplated by the policy never attached, because of the violation of the conditions, which were fundamental to the contract. The policy was void in its very inception. The parties making the assignment had no inter-

est at the time in the subject of the policy, and having no interest themselves, they could assign none. The policy being void in their hands, it was equally so in the hands of the assignee, who is one of the parties to whom the policy issued, and by whose misrepresentation it was rendered void from the beginning. The mere assent of the assurers to the assignment gave no force and vitality to the policy that was before utterly void in the hands of the assignors. The policy was not assignable without such assent, and the object of obtaining it was simply to authorize the transfer for what the policy was worth. By such assent the assurers only agreed to substitute the assignee in the place of the assignors ; but the causes that operated to render the policy void in its inception still adhered to it, and affected it in the hands of the assignee. He could occupy no better position than the assignors, in reference to the policy, unless it be by special contract with the assurers. It is true, as stated by writers of approved authority, that " if the assignment, taken in connection with the policy, plainly transfers the *assured's whole interest,* the underwriter's assent to it is evidently equivalent to his agreement to be directly answerable to the assignee. In such case, the proceedings to enforce payment may be in the assignee's name, and he becomes to all intents and purposes *the substituted party to the contract.*" 1 *Phill. on Ins., sec.* 84. But this, as is manifest, pre-supposes that the policy was at the time of assignment valid and operative ; that the assured held such interest in the subject matter of the insurance as was assignable, and sufficient to keep alive and subsisting the policy, according to the terms and conditions upon which it was issued. That was far from being the case in this instance. The policy was simply void, and the assent of the assurers to its assignment was neither intended nor operated to impart to it validity and a value that it never before had.

In the case of the *State Mut. Fire Ins. Co. vs. Roberts,* 31 *Penn. St. Rep.,* 438, in speaking of the effect of the assurer's assent to the assignment of the policy by the assured, the Court

said : " The supposition that there is some magic in the assent of the underwriters to an assignment, which converts the policy into a new contract with the assignee, arises out of a misapprehension of the purpose for which such assent is required.    As already stated, it is not to enlarge the engagement of the insurers, nor to enable them to waive any of the conditions, on the performance of which their liability depends. It is not to give new privileges to the assured, which without it he would not have, but it is solely for the protection of the insurers.    It would be a perversion of its design to give it any other effect."    See, also, the case of *Eastman vs. Carroll Co. Mut. Fire Ins. Co.*, 45 *Me.*, 307, where it was decided that a void policy is not rendered valid by an assignment of the holder, with the assent of the assurers.

As the case is finally disposed of in the question just decided, we shall reverse the judgment appealed from, without awarding a new trial.

                                        *Judgment reversed.*

