## DAVIS SHOE CO. v. KITTANNING INS. CO.

**APPEAL BY DEFENDANT FROM THE COURT OF COMMON PLEAS OF ARMSTRONG COUNTY.**

Argued October 13, 1890—Decided November 3, 1890.

[To be reported.]

1. Upon receiving proofs of a loss, furnished by the assured in an attempt to comply with the requirements of his policy, it is the duty of an insurance company to examine them, and if they be found objectionable, to return them, pointing out the particular defects therein.
2. It is not a sufficient compliance with this duty to return the proofs with a letter, quoting that part of the policy which prescribes the form of the proofs and what they shall contain, and stating merely that the proofs in question are not in accordance therewith.
3. The fact that an insurance company retained proofs, so furnished, for more than fifty days without objection, and then returned them as insufficient, but without any specific objection, is evidence sufficient to justify a verdict finding waiver of any defects in the proofs supplied.[*]
4. And, in such case, the waiver may be found, it seems, notwithstanding

------

[*] See Union Type Foundry v. Insurance Co., post 137.

Statement of Facts.

a provision in the policy " that no action taken, preliminary to an adjustment of a claim, to ascertain the amount and validity of such claim, shall be considered or treated as a waiver of any rights of this company."

5. When a commission for the taking of testimony in another state, and the entry of its issue upon the appearance docket, bear date on different days, it is not error to permit the prothonotary to testify, on the trial of the case, that the date upon the docket is correct and that the commission was misdated by mistake.

6. When objections to a deposition taken upon a commission are made first upon the trial of a cause, in disregard of a rule requiring such objections to be taken by exception within a specified time, it is not error to admit a deposition thus taken, although the form of the final interrogatory is not in compliance with Rule 11, § 57, Equity Rules.

7. An insurance company has no right to require a public officer to act in the adjustment of its risks. Wherefore, a condition in a fire policy requiring a certificate of examination from a public officer is of no effect, and the neglect of the assured even to ask for such a certificate would be no default on his part: Universal Ins. Co. v. Block, 109 Pa. 535.

Before Paxson, C. J., Sterrett, Green, Williams, McCollum and Mitchell, JJ.

No. 14 October Term 1890, Sup. Ct.; court below, No. 55 September Term 1888, C. P.

On September 14, 1888, the Davis Shoe Company brought assumpsit against the Kittanning Insurance Company, upon a policy of insurance against fire issued by the defendant company to the plaintiff. The defendant pleaded non-assumpsit and payment.

At the trial on March 21, 1889, the following facts were shown:

The defendant, on November 7, 1887, issued a policy insuring the plaintiff to the extent of $1,000, against loss by fire upon a stock of boots and shoes manufactured, or in process of manufacture, materials used in the manufacture of the same, and boxes, cases, etc., contained in the state penitentiary at Richmond, Virginia. By its terms, the amount of the policy was to be payable ninety days after the proofs of loss therein specified were received at the office of the company. The proofs of loss required to be made in the event of a fire, were specified in paragraph 11 of the conditions of the policy as follows:

"11. The assured under this policy, sustaining damage by

Statement of Facts.

fire to the property above described and making claim therefor, shall immediately give notice in writing of such claim, to this company at Kittanning, Pa., and within thirty days after the fire, to enable this company to verify the facts, [render a particular statement of said claim, signed and sworn to by the said assured, showing any and all insurance covering said property ; copy of the written portions of all policies ; the actual net cash value of the property ; the interest or title of the assured, and all others, therein ; any and all encumbrance thereon ; for what purpose, and by whom the building, and the several parts thereof, was occupied at the time of the fire ; when and how the fire originated ; and shall also produce a certificate of the officer in charge of the fire department at the time of the fire ; where none exists, then of a magistrate or notary public, nearest to the place of the fire, not concerned as a relative, creditor or otherwise, stating that he has examined the facts pertaining to the fire and claim, knows the character of, and verily believes that the claimant has, without fraud, sustained damage to the property specified, to the amount which such officer, after such examination, shall certify under oath.]

"And until such notice is given, particular statement and certificate produced, examinations, arbitration, appraisal or estimate permitted, and the statement of claim amended by the assured to conform to the award, the claim shall not be payable. Any fraud or false swearing shall bar all claim under this policy.

"It is an essential element of the consideration for the insurance under this policy, that no action taken, preliminary to an adjustment of a claim, to ascertain the amount and validity of such claim shall be considered or treated as a waiver of any rights of this company."

On January 31, 1888, during the life of the policy, the property insured thereby was totally destroyed by fire. On the same day the plaintiff's agents wrote to the defendant company giving notice of the loss, and requesting that the matter of adjustment receive prompt attention. Receiving no reply, the agents wrote another letter to the company dated February 11, 1888, as follows : "We beg to notify you that the Davis Shoe Company have prepared the necessary data for adjustment of their claim under your policy issued to them, and the adjusters will meet

in this city, Wednesday, 15th inst.   Kindly advise us as to your wishes in the matter."

This letter was also unanswered.   On February 25, 1888, proofs of loss were mailed to the defendant, which were received at its office on February 28th.   They did not state how and for what purposes the different parts of the building containing the insured property were occupied at the time of the fire, nor how the fire originated, though stating that it did not originate by any act, design or procurement on the part of the assured, or in consequence of any fraud or evil practice done or suffered by the assured.   Nor did they mention the subject of encumbrances upon the insured property but contained the following clause: "The property described in said policy belonged, at the time of the fire hereinafter mentioned, to Davis Shoe Company, and no other person or persons had any interest therein, except as follows: [Here occurred a blank, not filled up.]"

An inventory of the property insured under the policy and destroyed was not given.   A gross estimate thereof was given as follows: "The actual cash value of each specific subject thus situated and described by the aforesaid policy at the time of loss, and the actual loss and damage by said fire to the same, and for which claim is hereby made, was as follows: First item of policy, sound value, $150,598.24; total loss, $130,519.35; total insurance, $107,550; amount named in this policy, $1,000; claimed under this policy, $1,000; total amount claimed of this company under above named policy, $1,000.   For a detailed statement of value and loss, see schedule herewith, which is made a part of this proof of loss."

The proofs contained a copy of the written portions of the policy issued by the defendant, followed by this statement: "Full copies of the written portion of all other policies and indorsements, transfers and assignments, are hereunto annexed or will be furnished on demand."   No copies of other policies were actually attached.   In another place in the proofs of loss, the assured offered to furnish on call any other information required.   A certificate of the chief engineer of the Richmond fire department was appended, but it was unexecuted and the amount of the loss was not filled up therein.

On April 24, 1888, the president of the defendant company wrote to the plaintiff company as follows:

"Gentlemen: Herewith we return you paper purporting to be proof of loss under policy 31,302 of the Kittanning Insurance Company, which is unsatisfactory and incomplete, in that, it does not set forth as required by § 10 of the printed conditions of said policy:"

[Here followed a copy of § 11 of the conditions of the policy, as copied, supra, the portion thereof enclosed in brackets being underscored. The reference in the letter to § 10 was evidently a mistake, the section in the policy bearing that number having no reference to proofs of loss. The letter quoted, also, as part of the stipulations in the policy, the following, which did not appear in the portions of the policy printed in the appellant's paper-book: "The assured, if the claim be for damages to merchandise kept for sale, shall as a part of such claim furnish the last inventory thereof; also a statement showing the amount of the same, and of all merchandise purchased, manufactured or sold since such inventory." This quotation, also, was underlined. The letter then proceeded:]

"The portion of the requirements, regarding the proofs and notice of loss, wherein the enclosed paper is deficient, are set forth in the foregoing portion of this letter and are underlined.

"You are hereby notified that this company requires the proofs of loss to be in due form with these requirements."

On June 27, 1888, the defendant company received at its office second proofs of loss, in the same form as those previously furnished, with the addition of a statement as to how the different floors of the building were occupied at the time of the fire, a statement that the fire originated from a cause or causes unknown, and a regularly executed certificate of A. L. Fuqua, chief engineer of the Richmond fire department, in the form prescribed by the policy. At or about the same time, a letter was received at the defendant's office, from the plaintiff, dated June 25, 1888, assuring the company that an honest loss had been sustained, and requesting to be informed why the loss was not paid and what the defendant proposed to do in the matter. The defendant's secretary on July 1, 1888, wrote to the plaintiff as follows:

"Gentlemen: In answer to your favor of the 25th ult., we herewith hand you the papers purporting to be proofs of loss, under policy No. 31,302, and would respectfully refer you to

Statement of Facts.

our letter of April 24th, last, wherein we stated explicitly what we require in a proof of loss, in order that the conditions of our policy be complied with. And we hereby notify you that we require and demand that your proofs of loss shall be in compliance with our letter of April 24th, last."

To this letter, the plaintiff replied as follows on July 20th:

" Dear Sirs: We have examined your letter of April 24th, and must confess we are staggered with the questions you ask, but will try to answer them.

" First: Our agent gave you immediate notice of the fire. You had statement made by adjusters of our loss, which we thought would be better than our own. We now send you our statement.

" Our property burned had no encumbrance on it, none whatever. We occupied the building for making shoes, exclusively. Fire occurred in the morning at 5 o'clock. How, we do not know.

" I understand that our agent in Richmond, Mr. Cary, procured a sworn statement of the chief of fire department, stating that we had a fire, and sent it to you. He was not a ' relation, creditor or otherwise ; ' was honest, we can testify. We don't know as anybody else can, except the officers of the prison, who were on the spot during the fire. Nobody in our employ was within the walls of the prison at the time the building took fire.

" Your last clause, demanding the right to examine our books is exactly what we want you to do. You should send some person to do this, in justice to us. We are more than willing to place our loss in the hands of any fire insurance adjuster of honor, to settle. Our books are kept in the best of shape and can be easily and quickly examined. We feel you should do this, to preserve your own credit, as well as ours.

" There, we believe we have answered all the requirements of your letter of April 24th. If this is not satisfactory we fear we cannot satisfy you. We had insurance in seventy-seven companies. All have paid except nine. Some of these will pay ; two have failed, not able to pay in full. We understand you are able to pay, and certainly ought not longer delay to pay your just debt to us."

No further communications between the parties, prior to the bringing of this suit, were shown.

To establish some of the facts above stated, the plaintiff offered in evidence the deposition of T. A. Cary, taken at Richmond, Virginia, under a commission issued from the court below to Philip B. Shield. The record of the case showed that on January 18, 1889, the plaintiff's counsel filed a præcipe, directing the entry of a rule for a commission to Philip B. Shield, of Richmond, Virginia, 10th street, between Main and Bank, and a separate præcipe for the entry of a rule for a commission to Charles Hall Adams, of Boston, Massachusetts. A set of interrogatories was filed the same day. The prothonotary combined the two rules in one entry upon the appearance docket, and issued a rule, which was served on the defendant with a copy of the interrogatories on January 19, 1889. No cross-interrogatories were filed by the defendant. In accordance with the rule, the prothonotary subsequently issued a commission addressed to Philip B. Shield, Richmond, Va., empowering him to call before him, at a time and place by him to be appointed, all persons who might be named to him on the part of the plaintiff as witnesses in the cause, and examine them under oath, etc. The commission bore date February 4, 1889, but according to an entry upon the appearance docket the date of its issue was February 5th. Attached to it was a copy of the interrogatories filed by the plaintiff, with a caption which, after giving the style of the case, proceeded as follows:

" Now January 18, 1889, the plaintiff by its attorneys enters a rule for a commission to be issued to Philip B. Shield, of the city of Richmond, in the state of Virginia, and to Charles Hall Adams, of Boston, Mass., to take the testimony of witness on the annexed interrogatories, to be read in evidence on the trial of the above entitled case.

" Interrogatories to be propounded to the witnesses that may be produced sworn or affirmed and examined in the above cause on behalf of the plaintiff above named: " . . . .

On February 16, 1889, the commission issued to Philip B. Shield was returned, with the deposition of Thomas A. Cary, certified to have been taken at the office of John B. Cary & Sons, in the city of Richmond, on February 12, 1889, before Philip B. Shield, notary public and commissioner. Upon the filing of the commissioner's return, notice thereof was given

to the defendant's counsel, who thereupon filed exceptions not printed in the paper-books. The counter statement of the appellee alleged that these exceptions were directed merely to the answers made by the witness to some of the interrogatories, and that no exception was taken to the last interrogatory, which, with the answer thereto, was as follows:

" Lastly : Do you know any other matter or thing, touching the matters for which this action is brought, that may tend to the benefit or advantage of the said plaintiff. If yea, declare the same fully and at large, as if you had been particularly interrogated thereto.

" Answer: I do not know more than is stated above."

Upon the offer of this deposition in evidence, the defendant's counsel objected to its admission for the following reasons :

1. Because under § 55, Equity Rules, written notice of interrogatories and the names of the commissioners must be served at least fifteen days before the commission issues, and the papers show upon their face that the commission was served January 19, 1889, and the 15th day falling on Sunday, February 3, 1889, the defendant had the whole of Monday, the fourth of February, to file his cross interrogatories or name commissioners on his part, but said commission being issued on said February 4th, the defendant was deprived of his legal right, and therefore the testimony cannot be read in evidence. 2. Because the commission names two different commissioners, one in the city of Boston and one in the city of Richmond, and a joint commission is issued to them and it is executed separately. 3. The commission is totally defective in that it does not give occupations and places of abode of the commissioners or either of them. 4. It does not give the names, or places of abode, or occupations, or any other designation of the witnesses to be examined. 5. Because the last interrogatory is not in accordance with Equity Rules, § 57. 6. The testimony taken by Philip B. Shield, commissioner, was not taken at his office, the place designated in the commission, but at the office of John B. Cary & Sons. 7. The commission does not state where the testimony is to be taken, whether in the city of Richmond, in the city of Boston, or elsewhere.

The plaintiff's counsel then called the prothonotary of the court, and proposed to show by him that the commission was issued on February 5, 1889.

Statement of Facts.

Objected to, because the record as made out by the prothonotary shows that the commission was issued on February 4th, and he could not be permitted to contradict his own record.

By the court: Objection overruled; exception.[12]

The prothonotary having testified that the commission was not issued until February 5th, but that by some mistake he dated it on the 4th, the following ruling upon the offer of the deposition was made:

By the court: The record of the case on the docket kept by the prothonotary exhibiting the fact that the commission was issued on February 5, 1889, which is supported by the evidence of the prothonotary that he misdated the paper connected with the commission and that it went out as a commission dated the 4th instead of the 5th, as he should have dated it, we think that, so far as that exception is concerned, it is not sufficient and should not exclude the testimony for that reason. The fact is, that with reference to the whole commission and to every part of it, it was in the power of the defendant's attorney to have filed exceptions to whatever was defective; and, although a ruling has been made by one of the lower courts that would seem to indicate that the last interrogatory was not in form, according to the rules prescribed by the Supreme Court for direction in the equity side of the court, yet, as the form followed in this case was strictly in accordance with recognized authority in the way of form books, and as the practice has been absolute in this court for a great many years, and as this is not a departure from the practice of this court, it does not seem to the court that the omission to ask the question in that interrogatory, whether the party knew anything to the interest of either of the parties, is material, and for that reason we think that it would be now too late to raise the objection, after the deposition has been taken and full opportunities given to the other side to file cross-interrogatories, and, after the return of the interrogatories, to file specific objection to the interrogatories because of that omission. We therefore overrule the objection to the depositions and allow them to be read; exception.[13]

At the close of the testimony the court, NEALE, P. J., charged the jury in part as follows:

Charge of Court below.

The plaintiff requests the court to charge:

2. That if the jury believe that the plaintiff company mailed formal proofs of loss to the defendant company on February 25, 1888, and the defendant company received said proofs of loss on February 28, 1888, and made no objection to the same before April 24, 1888, it is for them, the jury, to say whether such facts were sufficient evidence of waiver by the defendant company of any informality or deficiency in the proofs of loss.

Answer: That point is affirmed.[1]

3. That under all the evidence in this case, it is for the jury to say whether the formal conditions of the policy relating to proofs of loss were waived by the defendant company.

Answer: That point is affirmed, and the question is submitted to the jury.

The defendant requests us to charge:

2. That there is no sufficient evidence to submit to the jury, on the question of waiver of preliminary proofs of loss required by the policy.

Answer: That point is refused.[2]

3. The loss claimed for in this case being upon numerous articles of personal property, it was necessary for the plaintiff to furnish the particular statement required by condition No. 11 of the policy.

Answer: Affirmed, unless the jury find that the laches or omissions of the defendant amount to a waiver.[3]

4. By the terms of the policy in suit, the assured was bound to furnish the defendant company a copy of the written portions of all policies, and having failed to do so, they cannot recover in this action.

Answer: Affirmed, unless the defendant directly or indirectly by their own acts waived the fulfilment of this condition.[4]

5. By the terms of the policy in suit, the assured was bound to furnish the defendant company with a particular statement of any and all encumbrances on said property, and having failed to do so, they cannot recover in this case.

Answer: Affirmed, unless waived by the defendant's acts or omission to act.[5]

6. By the terms of the policy in suit the assured was bound to furnish to the defendant company a particular statement

Charge of Court below.

for what purpose and by whom the building, and the several parts thereof, was occupied at the time of the fire, and said statement not having been furnished until June 27, 1888, and the suit brought September 14, 1888, and within ninety days after the claim was verified by the assured, the suit was prematurely brought and the verdict of the jury must be for the defendant.

Answer: Affirmed, unless the jury find that this compliance was waived by the acts of the defendant or the defendant's omission or laches.[6]

7. Under the policy of insurance under which this suit is brought, it was the duty of the assured to furnish to the defendant company, a certificate of the officer in charge of the fire department at the time of the fire; when none exists, then of the magistrate or notary public, nearest to the place of the fire, not concerned as a creditor, relation or otherwise, stating that he has examined the facts, pertaining to the claim and fire, knows the character of and verily believes that the claimant has without fraud sustained damage to the property specified to the amount which said officer, after such examination, shall certify under oath, ninety days before suit brought. Said certificate not having been furnished until June 27, 1888, and no reason or excuse given for not furnishing the same, and suit having been brought on September 14, 1888, it was prematurely brought and the plaintiff cannot recover in this action.

Answer: Affirmed unless the jury find that the conduct of the defendant was equivalent to a waiver.[7]

9. That the plaintiff having on February 28, 1888, furnished defective proofs of loss, and the defendant by letter on April 24, 1888, having returned said proofs to the plaintiff pointing out in what particulars they were defective, and the said plaintiff in accordance with the instructions contained in said letter, having made new proofs of loss, and on June 27, 1888, sent them to the defendant company, the defendant company had ninety days after the furnishing of such amended proofs to obtain information elsewhere or to decide whether or not they should pay said loss, but this suit having been brought on September 14, 1888, within ninety days, the same is prematurely brought and your verdict must be for the defendant.

Answer: This point affirmed, if the jury believe under all

Charge of Court below.

the evidence that the suit was brought within ninety days after the proofs of loss were furnished, and that the defendant by its acts and conduct had not waived the furnishing of such proofs of loss.[8]

10. That the plaintiff company not having filed their formal proofs of loss with the defendant company until August 2, 1888,* this action brought on September 14, 1888, was premature, and the plaintiff cannot recover.

Answer: That point is refused.[9]

11. The plaintiff having failed to comply with the second paragraph of condition 11 of the policy sued upon, this suit is prematurely brought and they cannot recover in the present action.

Answer: Affirmed, if the jury find that the defendant had not waived formal compliance with this condition.[10]

—The court charged further, in part as follows:

Now, then, the condition of the insurance company is this, that suit should be brought, as we have already read to you, " within ninety days after such claim shall have been verified, by assured as hereinafter required, and shall have been received at the office of the company." [It is claimed upon the part of the insurance company that they did not receive these proofs of loss until either the 27th day of June or even as late as August, 1888, and therefore the suit having been brought on September 14, 1888, that was within the time, ninety days, when no suit could be brought. If you find, gentlemen of the jury, and we leave it to you, if you find that the actual notification or submission of proofs of loss is to be counted as having been made either on the 27th June or in August, 1888, then the bringing of the suit was too soon, or prematurely as we term it.][11] But were the proofs of loss furnished then? That will be for you to say. There were proofs of loss furnished in February, 1888, and if the time was to be ninety days from that date within which suit should not be brought, why, then, suit was not brought within that time; suit was not brought

---

* What is here referred to, is not clear, upon the paper-books. There was no testimony printed, showing the receipt of any proofs of loss in August, and the defendant's secretary testified that he never received any except on February 28th and June 27th.

Arguments.

until six months afterwards.  You have to take the question
here, gentlemen, because it is an important one. . . . .

Why was the delay of fifty-four days?  It will be for you to
say, under all the evidence in this case, whether that was such
a delay, and such an omission, and such an act of negligence
on the part of the Kittanning Insurance Co., as would deprive
it now of taking advantage of the condition or clause in its
policy of insurance.  That, gentlemen, is the only question in
this case for you.  Under all the other aspects in the case,
these parties are hampered by these conditions of the policy.
If you find that the Kittanning Insurance Company has not
deprived itself of the advantages of these, its own conditions,
then the plaintiff cannot recover in this case.  If you find, on
the contrary, that the Kittanning Insurance Company, by its
own acts, negligence or omissions, has deprived itself of the
benefit of its own conditions, then it will be for you to say
whether or not the plaintiff is entitled to recover, and if so,
how much is he entitled to recover. . . . .

The jury returned a verdict in favor of the plaintiff for
$1,000.  A rule for a new trial having been discharged and
judgment entered, the defendant took this appeal, assigning
for error:

1. The answer to plaintiff's point.[1]
2–10. The answers to defendant's points.[2] to [10]
11. The part of the charge embraced in [ ] [11]
12, 13. The admission of the plaintiff's offers.[12] [13]

*Mr. W. D. Patton* (with him *Mr. H. L. Golden*), for the
appellant:

1. Notwithstanding the provision in the policy that no
action taken preliminary to an adjustment to ascertain the
amount and validity of a claim, shall be treated as a waiver of
any rights of the company, the court submitted to the jury the
question whether the proofs of loss required by the policy were
waived.  There was not the slightest evidence to justify that.
The court mentions only one fact, viz., that the proofs of loss
were held for fifty-four days by the defendant.  But silence
does not constitute a waiver when a party is not bound to
speak.  The defendant had ninety days after receiving the

Arguments.

proofs of loss, in which to decide whether or not to accept them. The authorities are full and clear that by mere silence it is not estopped: Mueller v. Insurance Co., 87 Pa. 399; Beatty v. Insurance Co., 66 Pa. 9; Desilver v. Insurance Co., 38 Pa. 130. The proofs furnished on February 25th were clearly defective. They were returned for correction on April 24th. The plaintiff acquiesced in the defendant's silence and sent amended proofs on June 27th. This action, brought in less than ninety days after June 27th, cannot be maintained: German Am. Ins. Co. v. Hocking, 115 Pa. 398.

2. The court should not have allowed the prothonotary to be called to contradict the record. The papers on file constitute the record, and the commission itself showed that it was issued on February 4th. In the absence of fraud, a record cannot be contradicted by parol testimony: Cumberland Co. v. Boyd, 113 Pa. 52. The deposition of Cary was not admissible. We had fifteen days in which to file cross-interrogatories, under § 55 of the Equity Rules adopted by this court. The interrogatories of the plaintiff were served on January 19th. The fifteenth day thereafter being Sunday, it was to be excluded from the count, and we had the whole of the succeeding day, February 4th, to file cross-interrogatories: Act of June 20, 1883, P. L. 136; Marks v. Russell, 40 Pa. 372. But the commission issued on that day, and therefore the deposition should have been rejected: Van Amringe v. Ellmaker, 4 Pa. 281. The commission was issued to two commissioners, and was executed by but one. It was totally defective in not designating the occupations, professions, or places of abode of the commissioners: Patterson v. Greenland, 37 Pa. 510. Moreover, the final interrogatory not being in the form prescribed by § 57 of the Equity Rules, the deposition should have been suppressed: Smith v. Cokefair, 1 Pa. C. C. R. 48.

*Mr. Ross Reynolds, Jr.* (with him *Mr. J. H. Painter*), for the appellee:

1. The proofs of loss furnished on February 25, 1888, complied substantially with all the conditions of the policy, except the one requiring the certificate of the fire marshal, and that the company had no right to require: Universal F. Ins. Co. v. Block, 109 Pa. 535. It was the company's duty to examine

Arguments.

the proofs of loss promptly, and notify the plaintiff of any formal defects discovered therein. By its delay in not returning the proofs, and by its neglect, when it did return them, to point out the particulars in which they were defective, the company waived its right to object to any defects that existed: Ben Franklin Ins. Co. v. Flynn, 98 Pa. 628; Bonnert v. Insurance Co., 129 Pa. 558; Trask v. Insurance Co., 29 Pa. 198; German Am. Ins. Co. v. Hocking, 115 Pa. 398; Coursin v. Insurance Co., 46 Pa. 323; Farmers' Ins. Co. v. Taylor, 73 Pa. 342; Inland Ins. Co. v. Stauffer, 33 Pa. 404; Lebanon Ins. Co. v. Erb, 112 Pa. 149; Snowden v. Insurance Co., 122 Pa. 502; Home Ins. Co. v. Davis, 98 Pa. 280; Universal F. Ins. Co. v. Morin, 13 W. N. 345.

2. If the proofs of loss are to be considered as furnished on June 27th, it would be in the power of the company to defeat this claim on the ground that they were not furnished within thirty days after the fire. The defence that the suit was prematurely brought, was first set up on the trial. Having previously denied liability and refused to pay the loss, the company waived, not only the condition regarding proofs of loss, but also the condition that suit shall not be commenced until ninety days after they have been furnished: Farmers' Ins. Co. v. Ensminger, 12 W. N. 9. Bare technicalities, such as are set up in this case, are not favored: Penna. Ins. Co. v. Dougherty, 102 Pa. 568.

3. No joint commission to take testimony was issued in this case. If there had been, an objection on that ground would not be sustained: Berghaus v. Alter, 9 W. 386. The address of the commissioner as given, viz., Richmond, Va., 10th street, between Main and Bank, was surely specific enough. The form of the interrogatories was that laid down in the form books and the rules of the court below, and universally followed in Armstrong county. A rule of the court below requires the filing of exceptions within ten days after notice of the return of a commission. Exceptions were filed by the defendant, but the last interrogatory was not excepted to, and it was too late to object on the trial. However, it nowhere appears that the defendant was injured thereby, and this court will not reverse for an immaterial error. And it was not error to permit the prothonotary to correct the mistake in the date

of the commission : Mohr v. Warg, 26 Pa. 106 ; Miller's App.,
2 Penny. 72; Myers v. Clark, 3 W. & S. 535.

OPINION, MR. CHIEF JUSTICE PAXSON :

The first assignment raises the only important question in
this record.   The plaintiff's second point requested the court
to instruct the jury : " That if the jury believe that the plaintiff
company mailed final proofs of loss to the defendant company
on February 25, 1888, and the defendant company received
said proofs on February 28, 1888, and made no objection to the
same before April 24, 1888, it is for them, the jury, to say
whether such facts were sufficient evidence of waiver by the
defendant company of any informality or deficiency in the
proofs of loss."   The learned judge below affirmed this point,
and, if he was right in this, the pivotal point of the cause, all
that follows is of little moment.

There is not even an allegation that the policy of insurance
was not taken out in the usual way, the premium fully paid,
and the loss an honest one.   The latter circumstance is not,
perhaps, material, so far as it concerns the law of the case.   It
may affect the moral aspect of the defence.   When an insur-
ance company is defending against fraud, it might well be
justified in resorting to even technicalities to defeat such
claim.   But, when it has issued its policy and received the
premium, it has entered into a contract of indemnity ; and com-
mon honesty requires that it should keep such contract in
good faith, and an attempt to defeat it by shifts, evasions, and
bald technicalities can only be regarded with a feeling border-
ing closely upon contempt.

The plaintiff company was doing business in the state of
Virginia.   The property insured was located at Richmond.
The defendant company is a Pennsylvania corporation having
its principal office at Kittanning, Pa., with agents in different
localities, whose business it is to solicit insurance.   Much of
its business appears to come from distant points where it is
least known.   The policy in this case was for $1,000, and dur-
ing the life thereof, viz., on the morning of January 31, 1888,
a fire occurred by which the property insured was injured and
destroyed in whole or in part.   On the same day, the assured
notified the company of the fire by letter, stating that the loss.

Opinion of the Court.

would probably be total.    There being a large amount of insurance on the same property in other companies, the assured, on the eleventh day of February, notified the insurance company of the meeting of adjusters to adjust the loss and claims. Proofs of loss were made out and sent to the company on the 25th of February, within the time prescribed by the policy. The proofs were very full, and stated, inter alia, that "any other information that may be required will be furnished on call."    No notice of these communications was taken by the insurance company until April 24th, when the proofs of loss were returned to the assured, with a letter stating generally that they are "unsatisfactory and incomplete, in that it does not set forth as required by § 10 of the printed conditions of said policy."    Then follows a copy of the section with the requisites of proofs of loss underscored.

There is not a single defect in the proofs pointed out, not a single subject named as to which the company desires other or fuller information, but the entire proofs were rejected with what amounts to a declaration that not one requisite had been complied with.    In point of fact there does not appear to have been anything omitted, unless it be the certificate of the officer in charge of the fire department, which certificate, under the ruling in Universal Ins. Co. v. Block, 109 Pa. 535, the company had no right to demand.    It was there held that a clause in a policy requiring such a certificate was void, this court saying through Mr. Justice GORDON: "The company had no right to require a public officer to act in the adjustment of its risks, and the neglect of the assured to even ask a certificate from that officer, would have been no default."    It was further said in that case, and it is wholesome law, and directly applicable to the case in hand: "Besides this, it was the duty of the company, on the receipt of the proofs, to return them if they were objectionable, and point out the particular defects. This it refused to do, but replied generally that they did not correspond with the printed instructions, and refused to receive them.    This was not sufficient.    Insurance companies cannot expect thus to escape from the payment of an honest claim, through technicalities which do them no harm and which they themselves can easily cure."    See, also, Bonnert v. Insurance Co., 129 Pa. 558, where, in obedience to a call

from the company, the assured sent his books for their examination. The books were kept and not returned until after the limitation had expired. We said: "It was the duty of the company to examine the books and papers promptly, and notify the plaintiffs of the result."

Here the proofs of loss were kept for over fifty days, and then returned without a specific objection. A few days would be sufficient to enable any company to examine the proofs in a given case, and ascertain if they were satisfactory. If not so, good faith requires that they should be promptly returned, and the specific omission pointed out, or the additional information wanted designated. The great mass of persons who insure their property are in the main ignorant of insurance law, and their business is often solicited by the agents of such companies; they are not accustomed to making out such papers as proofs of loss, and, when they are defective, the assured should be dealt with fairly, and no advantage taken of their ignorance. Here, the proofs of loss having been kept for a long time, and then returned without specific objection, we think, under all our cases, the company waived its right to call for further proofs. The learned judge below submitted the question of waiver fairly to the jury, and they have found it in favor of the plaintiff. We are of opinion that their finding was justified by the facts in the case. It follows that the suit was not prematurely brought. We find nothing in the minor questions of the case which requires discussion. There is no substantial error.

Judgment affirmed.

Mr. Justice MITCHELL noted his dissent.